2008-NMCA-158

196 P.3d 974

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Lloyd LUCERO, Defendant–Appellant.**

**No. 27,364.**

Court of Appeals of New Mexico.

Sept. 22, 2008.

Certiorari Granted, No. 31,365, Nov. 20, 2008.

Gary K. King, Attorney General, Santa Fe, NM, Joel Jacobsen, Assistant Attorney General, Albuquerque, NM, for Appellee.

Hugh W. Dangler, Chief Public Defender, Will O'Connell, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

CASTILLO, Judge.

{1} Defendant was convicted of involuntary manslaughter. On appeal, he argues that his conviction should be reversed because the trial court failed to properly instruct the jury on his claim of self-defense. We agree with Defendant and therefore reverse and remand this case for a new trial with proper jury instructions.

## I. BACKGROUND

{2} Defendant and his girlfriend were watching movies at the home of Defendant's mother when a car pulled into the driveway at two thirty in the morning. Loud music played from the car stereo, and the car's driver revved the engine and spun the tires. Defendant and his girlfriend did not recognize the car. Defendant watched from a window while the driver backed the car into the driveway, narrowly missing a propane tank. Defendant stepped outside, and the driver continued to maneuver—driving repeatedly backward and forward. Defendant loudly questioned the car's occupants, but he received no answer. Defendant was not able to see into the car.

{3} Defendant went back inside, dressed, and retrieved a .25 caliber pistol from his dresser. After unlocking the trigger lock, he put the gun in his pants pocket and kept his hand on the gun as he went back outside. At this point, the music was quieter, and Defendant could see that there were two people in the front seats of the car, but he still could not see into the back seat. The car started to pull away, but it stopped at the edge of the driveway. Victim got out of the car, walked rapidly toward Defendant, and punched him in the face. Defendant testified that as he stumbled backward, he put his hands up to his face, and the gun, still in his hand, went off. Victim got back in the car, drove away, and died a short time later.

{4} Defendant was charged with second degree murder, contrary to NMSA 1978, § 30–2–1(B) (1994). At trial, the jury was instructed to consider second degree murder, voluntary manslaughter, and involuntary manslaughter. In addition, the trial court instructed the jury on self-defense. After deliberations, the jury was unable to reach a verdict, and the trial court declared a mistrial. The State re-tried Defendant and amended the criminal complaint to charge only voluntary and involuntary manslaughter. The facts described above were those presented during the second trial. Defendant again proffered a self-defense jury instruction, which the trial court denied. The jury convicted Defendant of involuntary manslaughter, and Defendant appeals.

## II. DISCUSSION

{5} "The question of proper denial of a jury instruction is a mixed question of law and fact, which we review de novo." *State v. Neatherlin*, 2007–NMCA–035, ¶ 9, 141 N.M. 328, 154 P.3d 703. "For a defendant to be entitled to a self-defense instruction ... there need be only enough evidence to raise a reasonable doubt in the mind of a juror about whether the defendant lawfully acted in self-defense. If any reasonable minds could differ, the instruction should be given." *State v. Rudolfo*, 2008–NMSC–036, ¶ 27, 144 N.M. 305, 187 P.3d 170 (citation omitted). Defendant argues that there was sufficient evidence at the second trial to support an instruction on self-defense and that the trial court improperly refused to give the instruction. The State responds with three arguments: (1) that deadly force is never a reasonable response to a simple battery, (2) that Defendant was the first aggressor, and (3) that Defendant presented insufficient evidence at trial to support his proffered jury instruction. The trial court, in agreeing with the State that Defendant presented insufficient evidence to support a self-defense instruction, made the following comments:

All right, and for the record the [c]ourt wishes to state that with respect to the self-defense instruction or the issue of self-defense, the [c]ourt is of the opinion that the evidence has failed to support such an instruction. [D]efendant testified that the shooting of [Victim] was an accident. [D]efendant never testified nor was there any other evidence that he was in reasonable—that there was an appearance of immediate danger of death or great bodily harm to [D]efendant as a result of [Victim] striking him with—in the face with a fist or any of the other attendant circumstances. There is no indication that [D]efendant was, in fact, put in fear by the apparent danger of immediate death or great bodily harm and that he killed [Victim] because of that fear. The evidence is that he killed [Victim] by accident.... The evidence is absent with respect to any self-defense by [Defendant].

As a result, the case was sent to the jury without any mention of self-defense. With this as a background, we now turn to the State's arguments, which we will address in reverse order.

## A. Sufficient Evidence

{6} As a preliminary matter, we will begin with a review of the law of self-defense as it relates to the law of involuntary manslaughter because this case involves both theories. To receive a self-defense instruction, there must have been evidence to show that Defendant "was put in fear by an apparent danger of immediate bodily harm, that his [actions] resulted from that fear, and that [he] acted as a reasonable person would act under those circumstances." *State v. Denzel B.*, 2008-NMCA-118, ¶ 6, 144 N.M. 746, 192 P.3d 260 [No. 27,684 (May 7, 2008)] (first alteration in original) (internal quotation marks and citation omitted). This Court has held that "a defendant is entitled to a self-defense instruction if he or she introduces evidence from which the jury could reasonably find that the killing resulted from the threats or provocation that preceded it, even if the ultimate injury occurred accidentally." *State v. Gallegos*, 2001-NMCA-021, ¶ 13, 130 N.M. 221, 22 P.3d 689. In *Gallegos*, an altercation began after a group of friends had

been drinking. *Id.* ¶ 2. The defendant's husband was stabbed, and the defendant retrieved her pistol, intending to fire a warning shot into the air. *Id.* ¶ 3. Instead, the gun fired, and the shot hit the victim in the head. *Id.* The trial court refused to instruct the jury on self-defense, in part because the defendant's "testimony that the shooting was accidental was inconsistent with the theory of defense of another which presupposes an intentional act." *Id.* ¶¶ 5, 7 (noting that "case law and commentary treat 'defense of another' and 'self-defense' as virtually identical for purposes of analysis"). This Court reversed the trial court, noting that a "jury given a self-defense instruction can resolve any anomalies in the circumstances surrounding the homicide, including the question of whether the defendant accidentally killed the victim while defending himself or another." *Id.* ¶ 14.

{7} When evidence supports a defendant's theory that he was acting in self-defense, but that the resulting death was an accident, the trial court should instruct the jury using UJI 14–5181 NMRA, the non-deadly force self-defense instruction. *State v. Romero*, 2005–NMCA–060, ¶ 12, 137 N.M. 456, 112 P.3d 1113 ("[W]hen a defendant, asserting self-defense, claims that the resulting death was unintentional, [the deadly force self[-]defense instruction] is inappropriate and that [the nondeadly force self[-]defense instruction] is likely to better fit the facts of the case." (some alterations in original) (internal quotation marks and citation omitted)). In the present case, Defendant instead tendered UJI 14–5171 NMRA, which is the jury instruction relating to justifiable homicide and the use of deadly force. He modified it as follows:

The killing is in self-defense if:

1. There was an appearance of immediate danger of death or great bodily harm ... to [D]efendant as a result of [Victim] striking him in the face with a fist; and

2. [D]efendant was in fact put in fear by the apparent danger of immediate death or great bodily harm and killed [Victim] because of that fear; and

3. A reasonable person in the same circumstances as [D]efendant would have acted as [D]efendant did.

The trial court rejected this instruction, specifically because "[t]he evidence is that [Defendant] killed [Victim] by accident.... The evidence is absent with respect to any self-defense by [Defendant]." Despite Defendant's failure to proffer UJI 14–5181 instead of UJI 14–5171, he did offer evidence to support a self-defense theory. Defendant testified that he was afraid when he went outside carrying a loaded gun: "I felt threatened. I didn't know who was out there, and I didn't know what they were going to do or what they were planning on because they were not answering me at all, so that's why I went inside and grabbed my gun because I was concerned on who they were and I didn't know what they had[.]" There was also testimony that Defendant told a police officer that he "felt threatened for [his] life." Finally, Defendant stated that "all I wanted to do was protect myself."

{8} This Court has explained that "[w]hile the assertion that [a defendant] feared for h[is] life, without more, might not be enough to support a finding of self-defense, the circumstances [can] support such a finding." *State v. Branchal*, 101 N.M. 498, 502, 684 P.2d 1163, 1167 (Ct.App.1984). In *Branchal*, the defendant and the victim had shared a six-year, volatile relationship. *Id.* at 499, 684 P.2d at 1164. The defendant testified that she shot the victim because she was "scared [for her] life." *Id.* at 502, 684 P.2d at 1167. The trial court refused to instruct the jury on the defendant's self-defense theory because "there was no evidence that immediate danger of death or great bodily harm was imminent." *Id.* This Court disagreed and concluded that "[t]he tendered evidence with respect to past events bears directly on the reasonableness of [the] defendant's apprehension, the apparent immediacy of danger, and the reasonableness of her actions." *Id.* at 503, 684 P.2d at 1168. The *Branchal* Court thus considered the events of the entire evening, as well as the history between the defendant and the victim, in order to reach the conclusion that the defendant's self-defense theory was supported by the evidence. *Id.* at 502, 684 P.2d at 1167. In the present case, the events of the entire evening, together with Defendant's testimony, could raise a reasonable doubt about whether Victim's actions put Defendant in fear of great bodily harm resulting in Defendant's arming himself. *See Rudolfo*, 2008–NMSC–036, ¶ 27, 144 N.M. 305, 187 P.3d 170.

{9} In addition, there was also testimony to support the theory that the gun went off by accident. Defendant testified that after the punch, "[w]e both went like opposite ways, and right when I stumbled just like out of a reaction, I put my hands up and the gun was still in my hand at that time, and I shot off one round." Defendant explained the gunshot as "a reaction," and he testified that he "was not aiming at all." Although immediately after being arrested, Defendant told the investigating officer a different story—that the shot was intended to incapacitate and not kill—it is for the jury to weigh and resolve conflicting evidence and testimony. *See Gallegos*, 2001–NMCA–021, ¶ 14, 130 N.M. 221, 22 P.3d 689 ("A jury given a self-defense instruction can resolve any anomalies in the circumstances surrounding the homicide[.]").

{10} On appeal, Defendant summarizes his self-defense theory as follows:

At 2:30 in the morning, for no apparent reason, his yard was invaded by persons unknown to him who made a display of wild driving around his house. Music was blaring from the car, and the driver spun the tires wildly, several different times. The occupants made no attempt to explain why they were in [Defendant's] yard creating a disturbance, even when given a chance to do so. Nor did they leave after [Defendant] confronted them.

Whether [Defendant's] decision to initiate contact with the occupants of the car, given their persistent and menacing conduct, was brave or foolish is a matter of opinion; there can be no dispute that he was within his rights to do so.

This statement was supported by the evidence at trial. Based on this, we conclude that Defendant offered sufficient evidence to support a self-defense theory and an accidental shooting theory. *See id.* ¶ 13.

{11} The difficulty remaining is that Defendant presented an incorrect jury instruction to communicate his theory to the jury. *See Romero*, 2005–NMCA–060, ¶ 12, 137 N.M. 456, 112 P.3d 1113. We note, however, that "Defendant's tender of a proper, written instruction ... would not have alerted the trial court to its error ... and would not have resulted in avoidance of the error because the error was based on incorrect rationales having nothing to do with the tender of written instructions." *State v. Diaz*, 121 N.M. 28, 34, 908 P.2d 258, 264 (Ct.App.1995). The reasoning provided by the trial court supports the conclusion that had Defendant offered a jury instruction based on UJI 14–5181, the trial court would still have rejected the self-defense theory based on its belief that there was insufficient evidence to support "any self-defense by Defendant." In addition, the correct jury instruction would not have affected the trial court's second line of reasoning—that an accidental shooting theory is incompatible with a self-defense instruction. These conclusions were "incorrect rationales" having nothing to do with the tender of correct instructions. *Diaz*, 121 N.M. at 34, 908 P.2d at 264.

{12} Defendant raised and presented evidence to support a correct theory of self-defense. As a result, the trial court had an independent duty to instruct the jury on Defendant's theory of self-defense. *See State v. Lucero*, 1998–NMSC–044, ¶ 5, 126 N.M. 552, 972 P.2d 1143 ("It is basic that a defendant is entitled to have his [or her] theory of the case submitted to the jury under proper instructions where the evidence supports it." (alteration in original) (internal quotation marks and citation omitted)); *cf. Denzel B.*, 2008-NMCA-118, ¶ 18, 144 N.M. 746, 192 P.3d 260 (holding that a trial court does not err when it understands the defendant's incorrect theory of self-defense and refuses to instruct the jury on the incorrect theory). Defendant developed and adequately conveyed his theory but tendered the wrong jury instruction. This does not excuse the trial court's refusal to instruct the jury on self-defense because that refusal was based on a misunderstanding of the law regarding the interplay between accidental death and self-defense, as explained in *Galle-*

*gos* and *Romero*. Accordingly, we conclude that (1) Defendant presented sufficient evidence to raise a reasonable doubt about whether he acted in self-defense and (2) despite Defendant's failure to tender the correct jury instruction, the trial court understood his theory but misapplied the law to deny the jury instruction.

## B. State's Remaining Arguments

{13} We now turn to the State's remaining arguments and first consider whether Defendant was the first aggressor in the encounter and therefore not entitled to rely on self-defense. The rule in New Mexico is that "a defendant who provokes an encounter, as a result of which he [or she] finds it necessary to use deadly force to defend himself [or herself], is guilty of an unlawful homicide and cannot avail himself [or herself] of the claim that he [or she] was acting in self-defense." *Lucero*, 1998–NMSC–044, ¶ 7, 126 N.M. 552, 972 P.2d 1143 (alterations in original) (internal quotation marks and citation omitted). The State argues that Defendant was twice the first aggressor: first, by going outside a second time and second, by responding to the punch with deadly force. We have already explained that Defendant's evidence was sufficient to support a theory that he did not "respond" to the punch with deadly force, but rather that the gun went off by accident. In addition, according to Defendant's theory, he went outside in response to Victim's bizarre behavior in the driveway. The State does not offer evidence that Defendant behaved aggressively but states only that "Defendant followed after [Victim], going outdoors a second time to confront [Victim]." We fail to see how walking outside into one's own driveway, without more and considering the preceding events, would constitute precipitating a showdown, as suggested by the State. *See Branchal*, 101 N.M. at 503–04, 684 P.2d at 1168–69 (concluding that although the facts were disputed, the defendant presented sufficient evidence such that "[t]he jury could find that the incident was provoked by the victim, not the defendant, and that the provocation began before the defendant pulled the gun" and

holding that "the defendant was entitled to a self-defense instruction").

{14} The State also contends that deadly force is never a reasonable response to a simple battery. We acknowledge that "[i]t is well established that deadly force may not be used in a situation involving simple battery or in a struggle in which there has been no indication that death or great bodily harm could result." *State v. Duarte*, 1996–NMCA–038, ¶ 4, 121 N.M. 553, 915 P.2d 309. In the case before us, however, the evidence presented by Defendant at trial does not support a theory that he acted in self-defense by shooting—Defendant testified that the gun went off by accident. As we have already explained in preceding paragraphs, the evidence supported the theory that Defendant's fear of great bodily harm escalated throughout the encounter and culminated in his taking a loaded weapon outside to face an unknown and unpredictable person in the driveway at two thirty in the morning. The State's argument is directed to the language of Defendant's proffered jury instruction, and we have already concluded that the deadly force jury instruction was not the correct instruction to communicate Defendant's theory. Accordingly, we consider the reasonableness of Defendant's actions under the circumstances to be a question for the jury to determine. *See State v. Johnson*, 1996–NMSC–075, ¶ 21, 122 N.M. 696, 930 P.2d 1148 ("[T]he jury should have been allowed to determine whether [the defendant's] actions were reasonable under the circumstances[.]").

## III. CONCLUSION

{15} Because we conclude that reasonable minds could differ about whether Defendant acted in self-defense and that the State's remaining arguments are unavailing, we vacate the conviction and remand for a new trial in accordance with this opinion.

{16} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER and MICHAEL E. VIGIL, Judges.