IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2010-NMSC-011

Filing Date: March 2, 2010

Docket No. 31,365

STATE OF NEW MEXICO,

　　　Plaintiff-Petitioner,

v.

LLOYD LUCERO,

　　　Defendant-Respondent.

ORIGINAL PROCEEDING ON CERTIORARI
Eugenio S. Mathis, District Judge

Gary K. King, Attorney General
Joel Jacobsen, Assistant Attorney General
Santa Fe, NM

for Petitioner

Hugh W. Dangler, Chief Public Defender
William A. O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Respondent

OPINION

MAES, Justice.

**{1}** Following a jury trial, Lloyd Lucero (Defendant) was convicted of involuntary manslaughter, contrary to NMSA 1978, Section 30-2-3(B) (1994), in connection with the shooting death of Pablo Martinez (Victim). The Court of Appeals reversed Defendant's conviction, concluding that Defendant was entitled to receive UJI 14-5181 NMRA, self-defense by means of nondeadly force, because "Defendant offered sufficient evidence to support a self-defense theory and an accidental shooting theory." *State v. Lucero*, 2008-NMCA-158, ¶ 10, 145 N.M. 273, 196 P.3d 974. On appeal, the State claims that the Court

1

of Appeals improperly concluded that Defendant was entitled to UJI 14-5181 because (1) Defendant only offered evidence in support of an accidental shooting theory; (2) Defendant used deadly force, rather than nondeadly force, when he shot and killed Victim; (3) Defendant was the first aggressor in the conflict; and (4) Defendant failed to request UJI 14-5181 in writing as required by Rule 5-608 NMRA.

**{2}** We conclude that Defendant was not entitled to a self-defense instruction because the evidence adduced at trial established that the shooting was accidental, rather than intentional, and that the amount of force used by Defendant was excessive and unjustified under the circumstances. Accordingly, we reverse the judgment of the Court of Appeals and affirm Defendant's conviction.

## I.    FACTS AND PROCEDURAL HISTORY

**{3}** On July 23, 2005, at approximately 2:30 a.m., Defendant and his girlfriend, Stacy Leonard, were watching a movie at Defendant's home when a car pulled into the driveway blaring loud music, revving its engine, and "peeling out." Neither Defendant nor Stacy recognized the car, which narrowly missed hitting a propane tank as it maneuvered back and forth in the driveway. Defendant went outside and loudly questioned the car's occupants, but he received no response.

**{4}** Defendant went back inside the house, put on a pair of blue jeans and a pair of shoes, and retrieved a .25 caliber pistol from his dresser drawer. Defendant put the pistol in his right front pocket, went back outside, and walked toward the car with his hand resting on the handle of the pistol. The car was in the same spot where Defendant last had seen it, but the music was quieter and Defendant could now discern two individuals, one male and one female, sitting in the front seats. The car began to drive away, but stopped at the end of the driveway. Victim exited the car, walked rapidly toward Defendant, and punched him in the face. Defendant shot Victim once in the chest. Victim returned to the car and sped off, but subsequently died from the gunshot wound inflicted by Defendant.

**{5}** Defendant was arrested and charged by criminal information with second-degree murder, contrary to NMSA 1978, Section 30-2-1(B) (1994) and NMSA 1978, Section 31-18-16(A) (1993). In addition to second-degree murder, the jury was instructed on the lesser included offenses of voluntary manslaughter and involuntary manslaughter, as well as the defense of self-defense. The jury was unable to reach a verdict, however, and the trial court declared a mistrial.

**{6}** The State subsequently filed an amended criminal information charging Defendant with voluntary manslaughter, contrary to Section 30-2-3(A), and involuntary manslaughter, contrary to Section 30-2-3(B). During his second trial, Defendant testified that he had retrieved the pistol from his bedroom, where he unlocked the trigger lock and cocked the hammer, because

2

I felt threatened. I didn't know who was out there, and I didn't know what they were going to do or what they were planning on because they were not answering me at all, so that's why I went inside and grabbed my gun because I was concerned on who they were and I didn't know what they had[.]

Defendant stated that when Victim punched him in the face, "I stumbled just like out of a reaction, I put my hands up and the gun was still in my hand at that time, and I shot off one round." Defendant testified that he had not intended to shoot Victim, "[i]t was just the reflex of getting hit, you put your hands up. I pulled my hand out of my pocket and [inaudible] fired. I didn't even know how high I was aiming or how low or anything."

{7}     At the close of evidence, Defendant requested a self-defense jury instruction in accordance with UJI 14-5171 NMRA (justifiable homicide; self-defense). The trial court denied the instruction in light of Defendant's testimony that the shooting was an accident, rather than an intentional act of self-defense. The jury found Defendant not guilty of the crime of voluntary manslaughter, but guilty of the crime of involuntary manslaughter. The trial court rendered judgment in accordance with the jury's verdicts, and Defendant appealed his conviction.

{8}     The Court of Appeals reversed Defendant's conviction, noting that "'a defendant is entitled to a self-defense instruction if he or she introduces evidence from which the jury could reasonably find that the killing resulted from the threats or provocation that preceded it, even if the ultimate injury occurred accidentally.'" *Lucero*, 2008-NMCA-158, ¶ 6 (quoting *State v. Gallegos*, 2001-NMCA-021, ¶ 13, 130 N.M. 221, 22 P.3d 689). The Court determined that "[i]n the present case, the events of the entire evening, together with Defendant's testimony, could raise a reasonable doubt about whether Victim's actions put Defendant in fear of great bodily harm resulting in Defendant's arming himself," *id.* ¶ 8, and, therefore, the trial court improperly denied Defendant's request for a self-defense instruction. Although "there was also testimony to support the theory that the gun went off by accident," the Court explained that "it is for the jury to weigh and resolve conflicting evidence and testimony." *Id.* ¶ 9.

{9}     The Court noted that "[w]hen evidence supports a defendant's theory that he was acting in self-defense, but that the resulting death was an accident, the trial court should instruct the jury using UJI 14-5181 NMRA, the nondeadly force self-defense instruction." *Id.* ¶ 7 (citing *State v. Romero*, 2005-NMCA-060, ¶ 12, 137 N.M. 456, 112 P.3d 1113). Although Defendant had tendered an improper jury instruction, the Court determined that "'Defendant's tender of a proper, written instruction . . . would not have alerted the trial court to its error . . . and would not have resulted in avoidance of the error because the error was based on incorrect rationales having nothing to do with the tender of written instructions.'" *Id.* ¶ 11 (quoting *State v. Diaz*, 121 N.M. 28, 34, 908 P.2d 258, 264 (Ct. App. 1995)). Because the record reflected that "the trial court understood [Defendant's self-defense] theory but misapplied the law to deny the jury instruction," the Court held that "the trial court had an independent duty to instruct the jury on Defendant's theory of self-

3

defense." *Id.* ¶ 12.

**{10}** We granted the State's petition for writ of certiorari pursuant to NMSA 1978, Section 34-5-14(B) (1966) and Rule 12-502 NMRA to determine whether the Court of Appeals properly concluded that Defendant was entitled to UJI 14-5181, self-defense by means of nondeadly force. *State v. Lucero*, 2008-NMCERT-011, 145 N.M. 532, 202 P.3d 125.

## II.    DISCUSSION

**{11}** "The propriety of jury instructions given or denied is a mixed question of law and fact. Mixed questions of law and fact are reviewed de novo." *State v. Salazar*, 1997-NMSC-044, ¶ 49, 123 N.M. 778, 945 P.2d 996. "For a defendant to be entitled to a self-defense instruction . . . there need be only enough evidence to raise a reasonable doubt in the mind of a juror about whether the defendant lawfully acted in self-defense. If any reasonable minds could differ, the instruction should be given." *State v. Rudolfo*, 2008-NMSC-036, ¶ 27, 144 N.M. 305, 187 P.3d 170 (citation omitted). "When evidence at trial supports the giving of an instruction on a defendant's theory of the case, failure to so instruct is reversible error." *State v. Brown*, 1996-NMSC-073, ¶ 34, 122 N.M. 724, 931 P.2d 69.

**{12}** The State claims that the trial court properly denied Defendant's request for a self-defense instruction because Defendant testified that the shooting was an accident, rather than an intentional act of self-defense. Defendant does not dispute that the shooting was an accident, but nonetheless claims that he was entitled to a self-defense instruction pursuant to *Gallegos* and *Romero*.

**{13}** "Every killing of a person by another is presumed to be unlawful, and only when it can be shown to be excusable or justifiable will it be held otherwise." *State v. Noble*, 90 N.M. 360, 364, 563 P.2d 1153, 1157 (1977). A killing in self-defense is *justifiable* because "an otherwise criminal action becomes permissible under the circumstances. Self-defense is thus a complete defense; if established, a defendant is not guilty of the crime." 22 C.J.S. *Criminal Law* § 60 (2006) (footnote omitted); *see also* UJI 14-5171(justifiable homicide); 2 Charles E. Torcia, *Wharton's Criminal Law* § 138 (15th ed. 1994) (noting that a killing in self-defense is justifiable because "the killing of the assailant was 'authorized' by the law"). By contrast, an accidental killing is *excusable* because it is "an unintended homicide which occurs in the course of performing a lawful act, without criminal negligence." 2 Torcia, *supra*, § 138; *see also* UJI 14-5140 NMRA (excusable homicide). "As in other cases of excusable homicide, the slayer is not criminally responsible therefor, as an act that is committed accidentally does not involve a mental state cognizable to the criminal offenses of murder and involuntary manslaughter." 40 C.J.S. *Homicide* § 168 (2006) (footnote omitted).

**{14}** As the foregoing analysis reflects, the fundamental distinction between self-defense and accident is the defendant's mental state. A killing in self-defense is intentional in nature, but justified by the imminent threat to the defendant's life or limb, whereas an accidental

4

killing is unintentional and non-negligent in nature. This distinction is reflected in our uniform jury instructions. UJI 14-5171 (justifiable homicide; self defense), provides, in relevant part, that a killing is in self-defense if "[t]he defendant *was in fact put in fear* by the apparent danger of immediate death or great bodily harm and killed [the victim] *because of that fear*." UJI 14-5171 (emphasis added). By contrast, UJI 14-5140 (excusable homicide), provides, in relevant part, that a killing is accidental if it is committed "with usual and ordinary caution and *without any unlawful intent*." UJI 14-5140 (emphasis added); *see also* NMSA 1978, § 30-2-5(A) (1963) ("Homicide is excusable . . . when committed by accident or misfortune in doing any lawful act, by lawful means, with usual and ordinary caution and without any unlawful intent."). Indeed, juries are not given an instruction on the defense of accident because, in the absence of criminal negligence, the defendant cannot be found guilty of involuntary manslaughter. UJI 14-5140, Committee commentary; *see generally State v. Yarborough*, 1996-NMSC-068, ¶ 20, 122 N.M. 596, 930 P.2d 131 (holding that "the State must show at least criminal negligence to convict a criminal defendant of involuntary manslaughter").

{15}     To receive a self-defense instruction regarding justifiable homicide, Defendant was required to produce evidence supporting a reasonable inference that he intentionally and purposefully fired his pistol out of fear of immediate death or great bodily harm. However, Defendant failed to produce any evidence indicating that he fired the pistol intentionally. Indeed, Defendant testified that the pistol discharged accidentally or reflexively as a result of the physical assault initiated by Victim. Moreover, the evidence was insufficient for the jury reasonably to find that Victim threatened Defendant with death or great bodily harm. Although a punch to the face is the type of force that may cause bodily injury, it is not the type of force that creates a high probability of death, results in serious disfigurement, results in loss of any member or organ of the body, or results in permanent prolonged impairment of the use of any member or organ of the body. *See* UJI 14-131 NMRA (defining "great bodily harm"); *see also   State v. Heisler*, 58 N.M. 446, 457, 272 P.2d 660, 667 (1954) (holding that a defendant who shoots an individual during a fist fight is not entitled to a jury instruction on justifiable homicide); *State v. Duarte*, 1996-NMCA-038, ¶ 4, 121 N.M. 553, 915 P.2d 309 ("[D]eadly force may not be used in a situation involving simple battery or in a struggle in which there has been no indication that death or great bodily harm could result."); 2 Wayne R. LaFave, *Substantive Criminal Law* § 10.4(b) (2d ed. 2003) (noting that "deadly force may only be used against what is reasonably believed to be deadly force"). Accordingly, we conclude that the trial court properly denied Defendant's request for UJI 14-5171.

{16}     Defendant claims, however, that he was entitled to a justifiable homicide self-defense instruction pursuant to *Gallegos*. We disagree. In *Gallegos*, the defendant was charged and convicted of involuntary manslaughter after she shot and killed an individual who was involved in a physical altercation with her husband, during which her husband sustained two stab wounds. 2001-NMCA-021, ¶¶ 2-3. The State claimed that the defendant was precluded from raising the defense of self-defense because "self-defense requires an intent to do something in order to prevent injury or death," whereas involuntary manslaughter requires

5

the State to prove "an accidental killing." *Id.* ¶ 8. The Court of Appeals rejected the State's claim, reasoning that "[i]t is entirely plausible that a person could *act intentionally in self-defense* and at the same time achieve an *unintended result*." *Id.* ¶ 12 (emphasis added). Accordingly, *Gallegos* held that a defendant is entitled to a self-defense instruction if the evidence supports a reasonable inference that the defendant's use of force was intentional, even if the consequences of that force were accidental. *Id.* ¶ 13.

**{17}** In *Gallegos*, the evidence regarding the defendant's intentional use of force was conflicting. The defendant testified that "she never took aim and did not realize the gun had fired until someone shouted that she had shot Victim. She said she did not intend for the gun to go off when it did." *Id.* ¶ 4. However, an eyewitness to the shooting testified that the defendant intentionally had "aimed the gun at a fleeing combatant." *Id.* In light of the conflicting evidence regarding the defendant's intent, the Court of Appeals held that the issue of self-defense should have been submitted to the jury, reasoning that "[a] jury given a self-defense instruction can resolve any anomalies in the circumstances surrounding the homicide, including the question of whether the defendant accidentally killed the victim while defending himself or another." *Id.* ¶ 14.

> For example, if the jury found that the gun discharged accidentally due to some negligence on Defendant's part, it could also find that a reasonable person in the same circumstances would have taken care that the gun did not discharge. Therefore, Defendant's self-defense theory would fail, and the jury could convict her of the crime charged-involuntary manslaughter. The jury could also reject the self-defense theory if it found that Defendant knew that someone other than Victim stabbed Husband. Thus, the anomalies in the evidence that troubled the district court will be resolved by the jury when it is properly instructed.

*Id.* ¶ 15.

**{18}** We conclude that *Gallegos* is distinguishable from the present case. First, in *Gallegos*, the evidence regarding the defendant's intentional use of force was conflicting and, therefore, the issue properly was submitted to the jury for resolution. Second, in *Gallegos*, the jury reasonably could have found that the defendant's use of deadly force was "reasonable under the circumstances," *id.* ¶ 20, because the defendant's husband suffered two stab wounds, from which the jury reasonably could have inferred that (1) the defendant believed her husband was in immediate danger of death or great bodily harm, (2) she killed the victim to prevent the death or great bodily harm, and (3) a reasonable person in the same circumstances as the defendant would have acted as the defendant did. *Id.* ¶¶ 19-20; *see* UJI 14-5172 NMRA (justifiable homicide; defense of another). By contrast, the evidence in the present case was insufficient to establish that Defendant's use of force was either intentional or reasonable under the circumstances. Accordingly, we conclude that Defendant's reliance on *Gallegos* is misplaced.

6

**{19}** Alternatively, Defendant claims that he was entitled to a non-deadly force self-defense instruction pursuant to *Romero*. We disagree. In *Romero*, the defendant was convicted of second degree murder for the death of his wife. 2005-NMCA-060, ¶ 2. At trial, the evidence revealed "that the marriage involved domestic violence" and that the defendant and his wife had engaged in a physical altercation the night of her death. *Id.* ¶ 4. The defendant requested an instruction regarding nondeadly force self-defense, which the trial court denied, reasoning that an "instruction on nondeadly force self-defense is inapplicable as a matter of law when the victim dies." *Id.* ¶ 9. The Court of Appeals reversed the defendant's conviction, holding that UJI 14-5181 "is contemplated to be used in certain homicide cases" when the evidence reveals that "[t]he force used by defendant ordinarily would not create a substantial risk of death or great bodily harm." *Romero*, 2005-NMCA-060, ¶ 13 (internal quotation marks omitted). The Court concluded that *Romero* was one of those cases because

> the evidence was that [the defendant] was both humiliated and attacked by the victim. The attack, consisting of hitting, scratching, pinning down, and grabbing, allowed Defendant to respond with the like force of hitting, punching, grabbing, and biting. The victim's injuries, in the light most favorable to Defendant, were a broken nose, and various cuts and bruises. The cause of death was disputed, and in the light most favorable to Defendant, the cause of death did not exclude an accidental death *caused by the exercise of nondeadly force*.

*Id.* ¶ 15 (emphasis added).

**{20}** We conclude that *Romero* is distinguishable from the present case. In *Romero*, the defendant *intentionally* used *nondeadly* force in self-defense (i.e., hitting, punching, grabbing, and biting), but that force unintentionally and unforeseeably resulted in the victim's death. *See Gallegos*, 2001-NMCA-021, ¶ 12 (holding that a defendant who intentionally uses force in self-defense, but achieves an unintended result, may be entitled to a self-defense instruction). By contrast, in the present case, Defendant *unintentionally* used *deadly force* (i.e., shooting Victim in the chest), which had the foreseeable, albeit unintentional, consequence of killing Victim. Because Defendant's use of force was unintentional and ordinarily would (and in fact did) result in death or great bodily harm, Defendant was not entitled to UJI 14-5181.

**{21}** For the foregoing reasons, we conclude that Defendant was not entitled to a jury instruction regarding the intentional use of force in self-defense. Accordingly, we need not address whether Defendant was the first aggressor in the conflict with Victim or whether Defendant had tendered a proper self-defense instruction in accordance with Rule 5-608.

### III. CONCLUSION

**{22}** We hold that Defendant was not entitled to a jury instruction regarding justifiable

homicide, UJI 14-5171, or nondeadly force self-defense, UJI 14-5181, because the evidence established that the shooting was accidental, rather than intentional, and that the force used by Defendant was excessive and unjustified under the circumstances. Accordingly, we reverse the judgment of the Court of Appeals and affirm Defendant's conviction.

**{23}   IT IS SO ORDERED.**

_____
**PETRA JIMENEZ MAES, Justice**

**WE CONCUR:**

_____
**EDWARD L. CHÁVEZ, Chief Justice**

_____
**PATRICIO M. SERNA, Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**CHARLES W. DANIELS, Justice**

**Topic Index for _State v. Lucero_, No. 31,365**

| **CL** | **CRIMINAL LAW** |
|--------|------------------|
| CL-IV | Involuntary Manslaughter |

| **CA** | **CRIMINAL PROCEDURE** |
|--------|------------------------|
| CA-JI | Jury Instructions |
| CA-SD | Self Defense |