This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Filing Date: March 12, 2020**

**NO. S-1-SC-37110**

**STATE OF NEW MEXICO,**

> Plaintiff-Appellee,

v.

**CRYSTAL VIGIL,**

> Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF COLFAX COUNTY**
**Jeff F. McElroy, District Judge**

Bennett J. Baur, Chief Public Defender
William A. O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

**DECISION**

**BACON, Justice.**

**I.    INTRODUCTION**

**{1}**    Defendant Crystal Vigil was convicted of first-degree, willful and deliberate murder, contrary to NMSA 1978, § 30-2-1(A)(1) (1994), for the killing of her boyfriend, Zachariah Holderby (Victim). She was sentenced to life in prison and appeals directly to this Court, pursuant to Rule 12-102(A)(1) NMRA.

**{2}** In this appeal, we consider (1) whether the State presented sufficient evidence to sustain Defendant's conviction, (2) whether Defendant's right to confrontation was violated, and (3) whether the trial court should have tendered to the jury an instruction on accident. Concluding that none of these arguments support reversal or remand of Defendant's conviction, we affirm. Because New Mexico precedent sufficiently addresses any questions of law raised by Defendant, we dispose of this case by non-precedential decision. *See* Rule 12-405(B)(1) NMRA

## II.    BACKGROUND

**{3}** Victim was killed after Defendant shot him in the head. Victim was shot one time, in the middle of his forehead, from several feet away. Several witnesses were present during the shooting, which occurred following an altercation between Defendant and Victim. Statements given by witnesses were inconsistent; however, the following testimony was presented at trial.

**{4}** After a day of drinking and meth use, Defendant, Victim, Teri Marquez (Defendant's niece), and Trisha Rife were hanging out at the house that Defendant and Victim shared. Defendant and Victim were in a relationship, but Defendant testified that they fought constantly and were in the process of separating. Ms. Marquez lived with Defendant and Victim, on and off. While Ms. Marquez and Ms. Rife were in Ms. Marquez' bedroom, they heard Defendant and Victim screaming at each other in the living room. Defendant yelled for Ms. Marquez. When Ms. Marquez went into the living room, she told Victim to take a walk to cool off. Before Victim walked away, Defendant called him a bitch, to which he responded by throwing a drink at her.

**{5}** After the drink hit her, Defendant pulled a little black sunglasses bag out of her bra and pulled a gun out of the bag. When she saw the gun, Ms. Marquez told Defendant, "No!" Ms. Marquez tried to prevent Defendant from shooting Victim by holding Defendant's arm with one hand and holding Defendant's body back with the other. According to Ms. Marquez, when she could no longer hold Defendant back, she let go, and the gun went off. Defendant was shot in the forehead. Right after he was shot, Victim attempted to walk away. Both Ms. Rife and Ms. Marquez testified that Defendant followed him, calling him a bitch.

**{6}** While Victim lay on the floor, Defendant asked Ms. Marquez, "What do I do?" She took the gun, told Ms. Marquez to "clean it up," and left in a car waiting outside. Ms. Rife called 9-1-1, and the police arrived shortly thereafter. The murder weapon was never located. Defendant was charged with an open count of murder and tampering with evidence. Following a jury trial, Defendant was found guilty of first-degree, willful and deliberate murder but was acquitted on the charge of tampering with evidence.

## III.    DISCUSSION

**{7}** Defendant appeals her conviction on three grounds:[1] (1) the evidence presented at trial was insufficient to sustain a conviction for first-degree, willful and deliberate murder; (2) the trial court erred in disallowing cross-examination of a witness about statements purportedly made in text messages violating Defendant's right to meaningful confrontation; and (3) the trial court erred in denying her request to provide the jury her tendered instruction on accident. Determining that sufficient evidence supports the jury's verdict, no fundamental error occurred, and Defendant's remaining argument is unpreserved, we affirm Defendant's conviction.

## A. When Viewed in the Light Most Favorable to the Verdict, Sufficient Evidence Was Presented at Trial to Support Defendant's Conviction of First-Degree, Willful and Deliberate Murder

### 1. Standard of review

**{8}** "[T]he test to determine the sufficiency of evidence in New Mexico . . . is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314. "In reviewing whether there was sufficient evidence to support a conviction, we resolve all disputed facts in favor of the State, indulge all reasonable inferences in support of the verdict, and disregard all evidence . . . to the contrary." *State v. Largo*, 2012-NMSC-015, ¶ 30, 278 P.3d 532 (cleaned up). "We review sufficiency of the evidence on appeal from a highly deferential standpoint." *State v. Dowling*, 2011-NMSC-016, ¶ 20, 150 N.M. 110, 257 P.3d 930. "[O]ur review never serves as a substitution for the jury's fact-finding role[.]" *State v. Tafoya*, 2012-NMSC-030, ¶ 36, 285 P.3d 604. Yet, "the Court must scrutinize the evidence and review the jury's fact-finding function to ensure that a rational jury could have found the facts required for each element of the conviction beyond a reasonable doubt." *Dowling*, 2011-NMSC-016, ¶ 20.

### 2. Sufficient evidence was presented at trial for a reasonable jury to find that Defendant did, in fact, deliberate before killing Victim

**{9}** In order to sustain Defendant's first-degree murder conviction, there must be evidence that when Defendant killed Victim, she acted with deliberate intent. *See State v. Astorga*, 2015-NMSC-007, ¶ 58, 343 P.3d 1245. "Deliberate intention is intention that is arrived at or determined upon as a result of careful thought and the weighing of the consideration for and against the proposed course of action." *State v. Flores*, 2010-NMSC-002, ¶ 19, 147 N.M. 542, 226 P.3d 641 (cleaned up). Deliberation can happen in a short amount of time, but "[t]o constitute a deliberate killing," compared to a rash impulse, "the slayer must weigh and consider the question of killing and [her] reasons for and against such a choice." UJI 14-201 NMRA

---

[1] Defendant raised a number of arguments in her statement of issues; however, only three were discussed in her brief in chief, deeming the others abandoned. *See City of Santa Fe v. Komis*, 1992-NMSC-051, ¶ 22, 114 N.M. 659, 845 P.2d 753 ("Issues not briefed will not be reviewed by this Court.").

**{10}** Such "intent is subjective and is almost always inferred from other facts in the case, as it is rarely established by direct evidence." *State v. Cunningham*, 2000-NMSC-009, ¶ 27, 128 N.M. 711, 998 P.2d 176 (quoting *State v. Vigil*, 1990-NMSC-066, ¶ 2, 110 N.M. 254, 794 P.2d 728). It thus follows that, "just because each component may be insufficient to support the conviction when viewed alone does not mean the evidence cannot combine to form substantial, or even overwhelming, support for the conviction when viewed as a whole." *State v. Rojo*, 1999-NMSC-001, ¶ 23, 126 N.M. 438, 971 P.2d 829.

**{11}** Defendant argues that even when considering the evidence in the light most favorable to the verdict, her conviction cannot stand, as no evidence of deliberation was presented at trial. Defendant concedes that a jury can infer from evidence that deliberation occurred in a short amount of time, but she emphasizes that it is crucial that the State actually present *other* evidence. *See Tafoya*, 2012-NMSC-030, ¶ 42. Defendant claims that the State failed to present other evidence.

**{12}** The State responds by arguing that the test for sufficiency of the evidence is whether *any* rational jury could have found Defendant guilty, and stresses that this Court cannot reweigh the evidence "to determine if there was another hypothesis that would support innocence." *See State v. Garcia*, 2005-NMSC-017, ¶ 12, 138 N.M. 1, 116 P.3d 72.

**{13}** In giving deference to the fact-finding function of the jury, we conclude that sufficient evidence was admitted at trial to support Defendant's conviction of first-degree, willful and deliberate murder. To find Defendant guilty of first-degree, willful and deliberate murder, the jury had to determine that (1) Defendant killed Victim; (2) the killing was completed with "the deliberate intention to take away the life of [Victim];" and (3) "[t]his happened in New Mexico on or about the 13th or 14th day of December, 2016."

**{14}** Both Ms. Rife and Ms. Marquez provided testimony that Defendant was the one who pulled the trigger and killed Victim, and there was no dispute about the date of the killing, thus satisfying the first and third elements of the crime. Defendant, however, disputes that sufficient evidence supports the jury's finding of deliberation, as required to satisfy the second element.

**{15}** Defendant relies on the factual scenarios of several cases to demonstrate that she, like the defendants in the provided cases, did not deliberate, but rather, committed a rash and impulsive killing. We focus only on *Tafoya*, 2012-NMSC-030 and *State v. Garcia*, 1992-NMSC-048, 114 N.M. 269, 837 P.2d 862.

**{16}** In *Tafoya*, the defendant was convicted of attempted first-degree murder, among other crimes. 2012-NMSC-030, ¶ 1. This conviction stemmed from a shooting that occurred while the defendant was driving around with three women, listening to music, smoking meth and marijuana, and drinking alcohol. *Id.* ¶¶ 5-6. The car stalled, and the defendant shot one of the passengers, killing her instantly. *Id.* ¶¶ 6-7. Immediately

after shooting the first passenger, the defendant shot another passenger in the face. *Id.* ¶ 7. She survived her injuries, and the defendant was convicted of attempted first-degree murder for the second shooting. *Id.* ¶¶ 1, 7.

**{17}** On appeal, finding no evidence of deliberate intent, we remanded the case to the trial court for an entry of judgment of attempted second-degree murder. *Id.* ¶ 35. Because the statute for first-degree, willful and deliberate murder requires the State to prove a killing (or attempted killing) was committed willfully and deliberately, "[a] great deal therefore hinges on the definition of 'deliberate intent,' as this serves as the distinction between first and second degree murder." *Id.* ¶ 39. In *Tafoya*, there was no evidence of motive, and while the defendant was armed, a witness testified at trial that this was not unusual. *Id.* ¶ 46. We found that although the State claimed that the defendant had deliberately shot the victim to eliminate a potential eyewitness to the first murder, "without any evidence to support the argument, this was nothing more than mere conjecture." *Id.* ¶ 48. Time—only a second or two—was the only evidence in support of deliberation. *Id.* ¶ 52.

> Although, as we have established, the law allows for a jury to infer that a short amount of time can be sufficient to form deliberate intent, without other evidence supporting the inference that deliberate intent was actually formed, it would be difficult to ever make a "principled distinction between an impulsive killing and one that is deliberate and premeditated."

*Id.* ¶ 54 (quoting *Garcia*, 1992-NMSC-048, ¶ 30).

**{18}** In *Garcia*, the defendant was convicted of first-degree murder for the stabbing death of an acquaintance. 1992-NMSC-048, ¶¶ 3-4. After a day of drinking, the defendant and the victim began arguing. *Id.* ¶¶ 4-5. They argued on and off for a while, which ended with the defendant stabbing the victim in the chest. *Id.* ¶¶ 6-7. One witness testified that prior to the stabbing, the defendant had said to "[r]emove [the victim] away from me or you're not going to be seeing him for the rest of the day." *Id.* ¶ 6. Later, the defendant told a police officer, "I did it. I did it. I'm not ashamed to admit it. I told my brother I did him and I'd do him again." *Id.* ¶ 11.

**{19}** On review, we concluded that there was insufficient evidence of deliberation. *Id.* ¶ 15. In fact, we determined that there was no evidence that the defendant deliberated prior to stabbing the victim. *Id.* ¶ 28. The "only evidence before the jury, direct or circumstantial, as to his state of mind before the killing was that he quarreled with [the victim], and then appeared to make up . . . that he then quarreled again . . . and that he then cut his victim in the face and stabbed him in the chest." *Id*. Rather than demonstrating deliberate intent, "[t]his evidence is consistent with a rash and impulsive killing[.]" *Id.* Although there was sufficient time to form an intent, without evidence that an intent was actually formed, the conviction cannot stand. *Id.* ¶¶ 30, 32. We emphasized that the distinction between first- and second-degree murder is critical in order to differentiate "between those killings that are the most heinous and reprehensible, and therefore deserving of the most serious punishment under this

state's law, and those which, although 'intentional' in some sense, lack the gravity associated with first degree murders." *Id.* ¶ 19.

**{20}** In the two cases discussed above, we found no evidence of deliberation on review. In both, time was the only factor the State presented to show that the individual defendants deliberated. Here, unlike the above cases, there is evidence beyond the time it took for Defendant to pull the gun out of her bra, aim, and fire. She first had to pull a bag out of her bra and retrieve the gun from the bag. She also had to fight through another person to shoot Victim, went after Victim after shooting him to call him a bitch, told another person to "clean it up," and left the scene in a waiting car. Such facts are absent from the cases on which Defendant relies. Although Defendant asks us to equate her case to those where we concluded there was no deliberation, her case is distinguishable because there were additional details, aside from time alone, for the jury to consider in its determination that Defendant did deliberate.

**{21}** We focus on seven facts in arriving at our conclusion that Defendant deliberated. First, Defendant pulled a black bag out of her bra and pulled out a gun, which took several seconds. *See Tafoya*, 2012-NMSC-030, ¶ 54 ("[T]he law allows for a jury to infer that a short amount of time can be sufficient to form deliberate intent[.]"). Second, Defendant fought against Ms. Marquez's attempt to stop her from shooting Victim. *See Largo*, 2012-NMSC-015, ¶ 33 (stating that deliberate intent can be established when a defendant overcomes resistance to commit the murder). Third, after Ms. Marquez could not hold Defendant back any longer and released her arm, Defendant shot Victim in the middle of his forehead. *See id.* Fourth, Defendant and Victim had a conflict-ridden history, which included an incident where Defendant had stabbed Victim. *See State v. Smith*, 2016-NMSC-007, ¶ 20, 367 P.3d 420 (determining that there was sufficient evidence of deliberation when evidence is presented of earlier violence or confrontation). Fifth, after shooting Victim, and while Victim was on the ground, Defendant called him a bitch. *See State v. Guerra*, 2012-NMSC-027, ¶ 29, 284 P.3d 1076 (stating that a jury can infer deliberate intent when a defendant expresses no remorse after killing the victim). Sixth, Defendant told Ms. Marquez to "clean it up," and immediately fled the scene in a waiting car. *See Smith*, 2016-NMSC-007, ¶ 20 (concluding that there can be substantial evidence of deliberation when a defendant flees the scene). Seventh, Defendant gave inconsistent statements to police during questioning. *See id.* ¶ 20 (stating that substantial evidence of deliberation can include the defendant's provision of a false alibi).

**{22}** Here, as delineated above, the State introduced evidence beyond the temporal aspect of the crime that reasonably led the jury to find that Defendant deliberated before shooting Victim. Although Defendant challenges her conviction by emphasizing contrary facts, such evidence does not provide a basis for reversal or remand. *See Rojo*, 1999-NMSC-001, ¶ 19 ("Contrary evidence supporting acquittal does not provide a basis for reversal[,] because the jury is free to reject [a defendant's] version of the facts."). Accordingly, in viewing the evidence most favorable to the verdict, we affirm Defendant's first-degree murder conviction.

**B.      The Trial Court Did Not Commit Fundamental Error When it Properly Limited the Scope of Ms. Marquez' Cross-Examination**

**{23}**     Defendant claims that her niece, Ms. Marquez, sent a text message to another witness, Desiree Cisneros, where Ms. Marquez purportedly admitted to being the one who pulled the trigger.  Defendant asked the trial court to cross-examine Ms. Marquez about that message.  Notably, this message did not appear on Ms. Marquez's phone, which had been securely locked in the sheriff's office.  Despite her request to cross-examine Ms. Marquez using the inconsistent message, Defendant withdrew that request at trial.  Following the withdrawal, the trial judge ruled on the issue regardless, claiming that he did not want it to seem as though he had intimidated counsel into withdrawal.  The trial judge ruled the messages were inadmissible, as he found their prejudicial value outweighed their probativeness under Rule 11-403 NMRA.

**{24}**     Defendant contends that although her trial counsel withdrew the request to use the evidence, this Court should nonetheless reach the merits of her argument because the trial court issued a ruling.  In support of this argument, she cites only to a footnote from a case out of Georgia, which discusses reaching the merits of an untimely, rather than a withdrawn, motion.[2]  Because Defendant has provided no authority to support the specific relief she seeks, we do not find this argument persuasive**.**  In the alternative, she requests that we review the issue as plain error.

**{25}**     Defendant's plain error argument is twofold.  First, she argues that the trial court's Rule 11-403 analysis was flawed, because it was based on the credibility of a witness.  Defendant argues this was incorrect because the jury, rather than the judge, should determine credibility.  Second, Defendant claims that the ruling substantially affected her right to meaningful confrontation of a witness against her, along with her due process rights.

**{26}**     The State rebuts Defendant's argument by highlighting the fact that Defendant withdrew her request to cross-examine Ms. Marquez with the unauthenticated text messages.  Accordingly, the State contends, any perceived error is not preserved for review.  We agree, and because Defendant claims her constitutional right to confrontation was affected, we review for fundamental error only.

**{27}**     When an issue relating to a defendant's constitutional rights is not properly preserved, we review for fundamental error.  *Cunningham*, 2000-NMSC-009, ¶ 8.  The first step is determining whether an error occurred, and if so, we then consider whether that error was fundamental.  *State v. Silva*, 2008-NMSC-051, ¶ 11, 144 N.M. 815, 192 P.3d 1192.  In considering whether an error is fundamental, we "employ the fundamental error exception very guardedly, . . . to prevent the miscarriage of justice." *Id.* ¶ 13 (cleaned up).  Thus, we will reverse for fundamental error only where there is such question of the defendant's guilt that it "would shock the conscience" or where "substantial justice has not been served." *Id.* "Substantial justice has not been served

---

2*See Fulcher v. State*, 778 S.E.2d 159, 161n.4 (Ga. 2015) (stating that even though a motion is untimely, the reviewing court should reach the merits of the argument because the lower court issued a ruling).

when a fundamental unfairness within the system has undermined judicial integrity." *Id.* (cleaned up).

**{28}** In determining whether fundamental error was committed, Defendant would first have to demonstrate that the trial court committed error in limiting her cross-examination of Ms. Marquez. We perceive no error by the trial court in limiting the introduction of the unauthenticated messages to avoid juror confusion. Even if we concluded that it was erroneous to limit Defendant from introducing the messages, Defendant's guilt is not "so questionable that upholding a conviction would shock the conscience." *See Silva*, 2008-NMSC-051, ¶ 13. Therefore, the trial court did not commit fundamental error that would necessitate a new trial.

**C. The Trial Court Correctly Denied Defendant's Tender of a Jury Instruction on Accident, as "No Instruction Shall be Given on This Subject," and Defendant Withdrew Her Request, Thus Failing to Preserve the Issue for Appeal**

**{29}** Defendant argues that the trial court erred when it refused to tender her jury instruction on accident. She concedes this Court has stated that "[n]o instruction on this subject shall be given[,]" but at trial, asked the trial court to consider that this instruction is given in Massachusetts. *See* UJI 14-5140. Defendant argued at trial that this instruction was essential, because if the jury decided the killing was an accident, they need not consider the elements of homicide. However, after the trial court expressed surprise that Defendant was not requesting an involuntary manslaughter instruction, Defendant withdrew her request and asked for an involuntary manslaughter instruction in place of the accident instruction. She argues that regardless of her trial counsel's withdrawal of the request, the trial court should have given the instruction.

**{30}** The State contends that the trial court did not err when denying Defendant's request to tender an instruction on accident, especially given the fact that the Use Notes for UJI 14-5140 NMRA, the uniform jury instruction for accident, expressly state that the instruction shall not be given. The State directs us to *State v. Lucero*, 2010-NMSC-011, ¶ 14, 147 N.M. 747, 228 P.3d 1167, to explain that Defendant's request was improper because this Court held that "juries are not given an instruction on the defense of accident because, in the absence of criminal negligence, the defendant cannot be found guilty of involuntary manslaughter." The State stresses that Defendant cites to no New Mexico law that supersedes the Use Notes in UJI 14-5140.

**{31}** Not only does UJI 14-5140 clarify that "[n]o instruction on this subject shall be given," Defendant withdrew her request at trial to tender the instruction.

**{32}** UJI 14-5140 is the instruction on Excusable Homicide. It states:

> Evidence has been presented that the killing of _____ (*name of victim*) by defendant occurred by accident or misfortune

. . .

> If you determine that the defendant killed _____ (*victim*), by accident or misfortune you must find him not guilty.

UJI 14-5140. The committee commentary on UJI 14-5140 explains that because a defendant, in the case of an accident, will necessarily argue the absence of the essential elements of involuntary manslaughter, no separate instruction on accident is necessary. *Id.* Comm. cmt. "Indeed, juries are not given an instruction on the defense of accident because, in the absence of criminal negligence, the defendant cannot be found guilty of involuntary manslaughter." *Lucero*, 2010-NMSC-011, ¶ 14.

**{33}** Defendant advances no viable argument to support her contention that the trial court should have allowed her to introduce an instruction on accident despite the fact that we have expressly stated that the instruction shall not be given. Regardless, by withdrawing her request to tender the instruction, Defendant did not invoke a ruling by the trial court, thus failing to preserve this issue for review. *See Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 24, 314 P.3d 688 ("To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." (quoting *Woolwine v. Furr's, Inc.*, 1987-NMCA-133, ¶ 20, 106 N.M. 492, 745 P.2d 717)). Thus, this argument does not warrant a new trial.

## IV.    CONCLUSION

**{34}** For the foregoing reasons, we affirm Defendant's conviction.

**{35}    IT IS SO ORDERED.**

**C. SHANNON BACON, Justice**

**WE CONCUR:**

**JUDITH K. NAKAMURA, Chief Justice**

**BARBARA J. VIGIL, Justice**

**MICHAEL E. VIGIL, Justice**

**DAVID K. THOMSON, Justice**