**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number: 2010-NMSC-039

Filing Date:   July 13, 2010

Docket No. 31,218

STATE OF NEW MEXICO,
        Plaintiff-Petitioner,
v.

OMAR HENLEY,
        Defendant-Respondent.

ORIGINAL PROCEEDING ON CERTIORARI
Camille Martinez-Olguin, District Judge

Gary K. King, Attorney General
Joel Jacobsen, Assistant Attorney General
Santa Fe, NM

for Petitioner
Hugh W. Dangler, Chief Public Defender
Susan Roth, Assistant Appellate Defender
Santa Fe, NM

for Respondent

## OPINION

**SERNA, Justice.**

**{1}**    In our criminal justice system, the right to trial by jury is enshrined in the Sixth Amendment of the United States Constitution and Article II, Section 12 of the New Mexico Constitution.  "[I]t is the duty of juries in criminal cases to take the law from the court, and apply that law to the facts as they find them to be from the evidence." *Sparf v. United States*, 156 U.S. 51, 102 (1895).  In order for the jury to perform this duty, the court must instruct the jury on the law contained in our criminal statutes when the evidence presented at trial supports all the elements of the crime as defined by our Legislature.

**{2}**    In this case, the jury convicted Omar Henley (Defendant) of voluntary manslaughter, contrary to NMSA 1978, § 30-2-3(A) (1994), for the death of Mark Grey (Victim). Defendant appealed his conviction, and the Court of Appeals reversed in a Memorandum

Opinion, holding that the jury should have been instructed on involuntary manslaughter. *State v. Henley*, No. 27,925, slip op. (N.M. Ct. App. Apr. 16, 2008). We granted the State's petition for writ of certiorari, 2008-NMCERT-007, 144 N.M. 594, 189 P.3d 1216, and exercise jurisdiction over this appeal under Article VI, Section 2 of the New Mexico Constitution and NMSA 1978, Section 34-5-14(B) (1972).

**{3}** We conclude that the district court did not err by refusing to instruct the jury on involuntary manslaughter. An involuntary manslaughter jury instruction is proper only when the evidence presented at trial permits the jury to find the defendant had a mental state of criminal negligence. No such evidence was presented here, and thus instructing the jury on involuntary manslaughter would have been improper. Consequently, we reverse the Court of Appeals and reinstate Defendant's conviction for voluntary manslaughter.

## I. Background

**{4}** On February 6, 2006, Defendant and Victim happened upon each other on a residential street in Milan, New Mexico. The encounter quickly became violent: three shots were fired, resulting in Victim's death from a single bullet to his abdomen. Testimony at trial failed to establish which of the three shots was fatal.

**{5}** At trial, Defendant testified as to his account of the incident. Defendant was sitting in his car when Victim approached the passenger side window; Defendant lowered the window to talk and realized Victim was trying to rob him when Victim put a gun to Defendant's head. A struggle ensued, and, afraid for his own life, Defendant "reached as fast as [he] could to grab and [he] pushed the gun and a flash of light came out [of] the weapon[.]" Defendant then "put [his] level hand . . . on the barrel" of the gun and, after gaining control of the gun, fired it at Victim. Defendant "fired at [Victim] one more time" and drove away, unaware that Victim had died until so informed by the police. Defendant acknowledged that no blood was found in his vehicle.

**{6}** Two eyewitnesses provided different accounts of the crime. An individual who lived on the street where Victim was shot testified that he had a clear view of the encounter and saw Defendant shoot at Victim two times while Victim was walking towards Defendant's car. The driver of the vehicle in which Victim was riding testified that Victim was unarmed and walked up to Defendant's car, where an argument ensued and Defendant shot Victim twice as Victim was trying to open the door.

**{7}** Defendant requested the jury be instructed on involuntary manslaughter. The State objected, arguing that no evidence was presented supporting the involuntary manslaughter instruction because the evidence failed to show that Defendant had committed "a lawful act done through a negligent behavior." The district court, reading from *State v. Romero*, 2005-NMCA-060, ¶ 17, 137 N.M. 456, 112 P.3d 1113, articulated three situations in which evidence warrants an involuntary manslaughter instruction: "killing of a human being . . . [(1)] in the commission of an unlawful act not amounting to a felony . . . [; (2)] in the

commission of a lawful act that might produce death in an unlawful manner . . . [; or (3)] in the commission of a lawful act that might produce death without due caution or circumspection." The district court noted that the evidence presented did not appear to satisfy any of the categories. Defendant argued that his testimony established the first gun shot was fired accidentally during the course of a struggle with Victim, placing the facts within the third category. Defendant also argued that an involuntary manslaughter instruction was appropriate due to evidence of imperfect self-defense.

**{8}** Defendant submitted the following involuntary manslaughter jury instruction:

For you to find the defendant guilty of involuntary manslaughter, the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1.  [Defendant] struggled with [Victim] over a gun and a discharged bullet struck [Victim] in the abdomen killing him;
2.  [Defendant] should have known of the danger involved by [Defendant's] actions;
3.  [Defendant] acted in willful disregard for the safety of others;
4.  [Defendant's] act caused the death of [Victim];
5.  This happened in New Mexico on or about the 6th day of February, 2006.

The district court did not issue the instruction because Defendant was unable to proffer evidence satisfying one of the categories of the involuntary manslaughter statute.

**{9}** The jury was instructed on second-degree murder, voluntary manslaughter, self-defense, and tampering with evidence. After deliberation, the jury returned a guilty verdict on the voluntary manslaughter charge, rejecting the theory that Defendant acted in self-defense, and not guilty of second-degree murder and tampering with evidence. Defendant appealed his conviction on the ground that the district court erred in not issuing the involuntary manslaughter instruction.

**{10}** The Court of Appeals reversed Defendant's conviction. *Henley*, No. 27,925, slip op. at 5. The Court noted that "jury instructions on involuntary manslaughter are not typically warranted in cases involving fatal shootings, when theories of self-defense and imperfect self-defense are at issue." *Id.* at 2 (citing *State v. Abeyta*, 120 N.M. 233, 240-42, 901 P.2d 164, 171-73 (1995), *abrogated on other grounds by State v. Campos*, 122 N.M. 148, 158 n.4, 921 P.2d 1266, 1276 n.4 (1996)). Referencing a "clear pronouncement" in *Abeyta*, *id.* at 4, the Court of Appeals identified an exception "where a claim of accidental shooting is involved," *id.* at 2-3 (citing *Abeyta*, 120 N.M. at 242, 901 P.2d at 173; *Romero*, 2005-NMCA-060, ¶¶ 2, 15; and *State v. Gallegos*, 2001-NMCA-021, ¶¶ 12-15, 130 N.M. 221, 22 P.3d 689), and concluded that the "confluence of evidence of imperfect self-defense with evidence of an accidental shooting . . . supports instruction on the offense of involuntary

3

manslaughter." *Id.* at 4 (citing *Abeyta*, 120 N.M. at 242, 901 P.2d at 173). Holding that the district court's failure to issue an involuntary manslaughter jury instruction was not harmless error, the Court of Appeals reversed and remanded for further proceedings. *Id.* at 5.

## II.    Analysis

**{11}**    We granted certiorari on two questions:  (1) Whether the offense of involuntary manslaughter requires a showing of criminal negligence, and, if so, whether the Court of Appeals erred in holding that the confluence of evidence of imperfect self-defense and accident was an adequate substitute for criminal negligence; and (2) whether Defendant preserved his right to a "confluence" jury instruction.  We answer both parts of the first question in the affirmative; as a result, we do not reach the second question.

**{12}**    Our review of this appeal is de novo, because "[t]he propriety of jury instructions given or denied is a mixed question of law and fact." *State v. Salazar*, 1997-NMSC-044, ¶ 49, 123 N.M. 778, 945 P.2d 996; *accord State v. Gaitan*, 2002-NMSC-007, ¶ 10, 131 N.M. 758, 42 P.3d 1207.  We start by discussing the mental state required for conviction under our involuntary manslaughter statute, then consider whether the Court of Appeals' "confluence" theory is a correct articulation of the elements of involuntary manslaughter, and conclude by reviewing the evidence to determine whether the district court erred in not issuing Defendant's requested instruction.

## A.    The Mens Rea for Involuntary Manslaughter is Criminal Negligence

**{13}**    Our Legislature has defined involuntary manslaughter as "the unlawful killing of a human being without malice . . . committed in the commission of an unlawful act not amounting to felony, or in the commission of a lawful act which might produce death in an unlawful manner or without due caution and circumspection."  Section 30-2-3(B). Defendant argues that the evidence presented at trial satisfies the definition of involuntary manslaughter because Victim died as a result of a lawful act exercised without due caution or circumspection.

**{14}**    A defendant may be convicted of involuntary manslaughter when a convergence of the proper act and state of mind requirements result in the death of an individual. *See State v. Padilla*, 2008-NMSC-006, ¶ 12, 143 N.M. 310, 176 P.3d 299.  Involuntary manslaughter occurs only when the killing is unintentional. *See State v. Pruett*, 27 N.M. 576, 579, 203 P. 840, 841 (1921).  Our case law has made clear, and the district court in this case recognized, that a jury will be issued an involuntary manslaughter instruction if the evidence of the homicide fits one of three categories:  "1) the commission of an unlawful act not amounting to a felony; 2) the commission of a lawful act that might produce death, in an unlawful manner; or 3) the commission of a lawful act that might produce death without due caution and circumspection." *Salazar*, 1997-NMSC-044, ¶ 54 (citing *State v. Yarborough*, 1996-NMSC-068, ¶ 8, 122 N.M. 596, 930 P.2d 131).  The act causing the victim's death must fit one of those categories; the death itself must be unintentional.

4

**{15}** The required mens rea for a conviction of involuntary manslaughter is criminal negligence. *State v. Lucero*, 2010-NMSC-011, ¶ 14, 147 N.M. 747, 228 P.3d 1167 ("[I]n the absence of criminal negligence, the defendant cannot be found guilty of involuntary manslaughter."); *Yarborough*, 1996-NMSC-068, ¶ 20 (holding that "the State must show at least criminal negligence to convict a criminal defendant of involuntary manslaughter"). This standard is reflected in the statutory language permitting a charge of involuntary manslaughter when an otherwise lawful act is conducted "without due caution or circumspection." Section 30-2-3(B).

**{16}** The showing of criminal negligence required for an involuntary manslaughter jury instruction includes the concept of recklessness, in which a defendant "consciously disregards a substantial and unjustifiable risk" that harm will result from his conduct. Model Penal Code § 2.02(c) (Official Draft and Revised Comments 1962). The uniform jury instruction on criminal negligence incorporates this definition, defining criminal negligence as existing when a person "act[s] with willful disregard of the rights or safety of others and in a manner which endanger[s] any person or property." UJI 14-133 NMRA. Likewise, the instruction on involuntary manslaughter states that the defendant "should have known of the danger involved by [his or her] actions." UJI 14-231 NMRA. To be convicted of involuntary manslaughter, a defendant must have been aware of the risk caused by his or her conduct and continued to act.

**{17}** Our case law has long integrated the requirement of subjective knowledge into the showing of criminal negligence required by our involuntary manslaughter statute. *See State v. Harris*, 41 N.M. 426, 428, 70 P.2d 757, 758 (1937) (defining criminal negligence required for involuntary manslaughter as "so reckless, wanton, and willful as to show an utter disregard for the safety of [others]"); *see also Yarborough*, 1996-NMSC-068, ¶ 20 (noting, in a vehicular homicide case, that to find criminal negligence, "[the jury] must find that [the defendant] drove with willful disregard of the rights or safety of others and in a manner which endangered any person or property" (quoting NMRA 14-241 (1996))); *Romero*, 2005-NMCA-060, ¶ 17 (finding that an involuntary manslaughter jury instruction should have been given where the defendant presented evidence that he was acting lawfully in self-defense but "without due caution or circumspection due to" the victim's medical condition, of which the defendant was aware); *cf. Lucero*, 2010-NMSC-011, ¶ 14 (stating that a jury instructed on involuntary manslaughter is not also instructed on accident, as accident requires proof of "usual and ordinary caution and without any unlawful intent," in contrast to the required showing of criminal negligence for an involuntary manslaughter instruction (internal quotation marks and citation omitted) (emphasis omitted)). Criminal negligence in the context of involuntary manslaughter requires subjective knowledge by the defendant of the danger or risk to others posed by his or her actions. A jury may not be instructed on involuntary manslaughter unless the evidence presented at trial shows the defendant could be found criminally negligent when engaging in the act causing the victim's death.

**B.      The "Confluence" of Defenses that Do Not Require a Criminally Culpable**

**Mental State Is Not a Substitute for Criminal Negligence**

**{18}**    The Court of Appeals' opinion does not identify evidence of criminal negligence to show that the district court erred by refusing to issue the requested involuntary manslaughter jury instruction, but rather bases its conclusion on Defendant's theories of accident and imperfect self-defense.  *Henley*, No. 27,925, slip op. at 3-4.  We now review the requirements of accident and imperfect self-defense to determine whether evidence of those defenses provides a valid substitute for criminal negligence.

**{19}**    An accidental killing "is excusable because it is an unintended homicide which occurs in the course of performing a lawful act, without criminal negligence." *Lucero*, 2010-NMSC-011, ¶ 13 (internal quotation marks and citation omitted) (emphasis omitted).  It is "unintentional and non-negligent in nature." *Id.* ¶ 14.  While both involuntary manslaughter and accident relate to unintentional killings, an involuntary manslaughter jury instruction is proper when evidence of criminal negligence exists.  *Id.*  Although instructions on alternative and inconsistent theories may be issued in the same case, *see*, *e.g.*, *Stevenson v. United States*, 162 U.S. 313, 322-23 (1896) (recognizing that jury instructions on inconsistent theories are not improper if supported by the evidence), the mens rea of accident and involuntary manslaughter are irreconcilably distinct, and the evidence of one does not support instructing the jury on the other.

**{20}**    Self-defense, unlike accident, is an intentional act.  *See Lucero*, 2010-NMSC-011, ¶ 15.  To justify a killing as self-defense, the evidence must establish that the defendant acted "intentionally and purposefully . . . out of fear of immediate death or great bodily harm." *Id.* ¶ 15.  Imperfect self-defense occurs when an individual uses excessive force while otherwise lawfully engaging in self-defense.  *Abeyta*, 120 N.M. at 241, 901 P.2d at 172.

**{21}**    In *Abeyta* we held that the district court did not err in refusing the defendant's tendered involuntary manslaughter instruction when the defendant argued that he had killed two of his victims in imperfect self-defense.  *Id.* at 242, 901 P.2d at 173.  We analyzed the propriety of that instruction under the act and mental state requirements of the involuntary manslaughter statute's three categories.  We stated that, when a defendant argues imperfect self-defense, an involuntary manslaughter instruction is "inappropriate" because the "use of excessive force in self-defense renders the entire action unlawful[]" and shooting at a person would be a felony, thus precluding a conviction of involuntary manslaughter for failure to satisfy the act requirement of either of the first two categories of the statute.  *Id.* at 241-42, 901 P.2d at 172-73.  We then noted that "it is possible for an accidental shooting to occur in the process of imperfect self-defense." *Id.* at 242, 901 P.2d at 173.  In *Abeyta*, however, this observation had no bearing on our holding, as we found that the evidence presented at trial established either that the victim pulled the trigger on herself during a struggle, in which case the defendant would not be legally responsible, or that the defendant controlled the weapon and intended to kill the victim, making an involuntary manslaughter instruction inappropriate because the killing was not unintentional. *Id.* at 242-43, 901 P.2d at 173-74. The facts of *Abeyta* did not establish that the defendant acted with the mens rea requisite for

6

involuntary manslaughter based on the third category of the statute, performing an otherwise lawful action without due caution or circumspection and therefore the instruction would have been inappropriate.

**{22}**     The Court of Appeals relied on *Abeyta* for the conclusion, that evidence of an accidental escalation of self-defense into imperfect self-defense permits an involuntary manslaughter instruction. *Henley*, No. 27,925 slip op. at 4 (citing *Abeyta*, 120 N.M. at 242, 901 P.2d at 173). The difference between the mental states required for the two distinct defenses, however, demonstrates the Court of Appeals' analysis' erroneous reliance on our dicta in *Abeyta*. If a homicide is accidental, the defendant acted without a criminally culpable state of mind in performing a lawful act, unintentionally killing the victim. If a homicide occurs as a result of imperfect self-defense, however, the defendant acted intentionally in self-defense and the use of excess force rendered the killing unlawful. An involuntary manslaughter instruction is proper only where there is evidence of an unintentional killing and a mens rea of criminal negligence; evidence of supporting alternative, and incompatible, theories may not be substituted for the act and mental state requirements of the involuntary manslaughter statute.

**{23}**     Other jurisdictions that have encountered this question have reached a similar conclusion. The Supreme Court of Georgia has held that evidence supporting theories of both accident and self-defense preclude a jury instruction on involuntary manslaughter due to the conflicting mental states. In *Finley v. State*, the Georgia Court found no error when the jury was not instructed on involuntary manslaughter as the defendant had argued accident and self-defense. 685 S.E.2d 258, 261 (Ga. 2009). The self-defense theory meant the defendant had acted intentionally, while the accident theory meant no crime occurred, and therefore the defendant could not be convicted of involuntary manslaughter because the evidence did not show that the killing resulted from an act other than a felony. *Id.* (also noting that the defendant could not be convicted of manslaughter by unintended consequence in the course of unlawful act other than a felony because the defendant was a felon in possession of a firearm); *see also Brown v. State*, 586 S.E.2d 323, 325 (Ga. 2003) ("[T]he evidence relied upon by [the defendant] established either that the pistol discharged accidentally when the victim wrestled [the defendant] over its control or that [the defendant] intentionally fired the weapon. The charge on involuntary manslaughter thus was not required."). Texas courts have taken a similar approach to find that evidence of accident and self-defense cannot combine to show criminal negligence. In *Gonzales v. State*, the defendant argued that the fatal shots were fired accidentally when he was acting in self-defense. 632 S.W.2d 899, 902-03 (Tex. App. 1982). The court reasoned that "[t]he evidence, taken as a whole, shows that appellant was either guilty of murder or was guilty of no offense at all because the shooting was an accident or justifiable self-defense[,]" and thus did not show the requisite criminally negligent mental state. *Id.* at 903-04 (discussing the mental state for criminally negligent homicide).

**{24}**     We continue to adhere to our statement in *Abeyta* that "where a defendant shoots someone in imperfect self-defense, the charge of murder can only be mitigated to voluntary

7

manslaughter and an instruction on involuntary manslaughter is inappropriate." 120 N.M. at 242, 901 P.2d at 173; *see also State v. Sosa*, 1997-NMSC-032, ¶ 32, 123 N.M. 564, 943 P.2d 1017 (characterizing *Abeyta* as establishing that "voluntary manslaughter is the lowest degree of homicide that can be charged where there is imperfect self-defense" and holding that the district court committed fundamental error by issuing an involuntary manslaughter jury instruction when the evidence permitted an instruction on imperfect self-defense); *cf. Gallegos*, 2001-NMCA-021, ¶¶ 13, 16 (holding that "self-defense, imperfect or otherwise, can be raised as a defense to an initial charge of involuntary manslaughter"). As a result, the Court of Appeals erred in concluding that "the confluence of evidence of imperfect self-defense with evidence of an accidental shooting[,]" *Henley*, No. 27,925, slip op. at 3-4, is a substitute for evidence of the criminal negligence mental state required for an involuntary manslaughter conviction.

**C.     The Evidence Presented Does Not Support A Jury Instruction on  Involuntary Manslaughter**

**{25}**     Our remaining task is to determine whether Defendant should have received an involuntary manslaughter jury instruction based on the evidence presented at trial. "When evidence at trial supports the giving of an instruction on a defendant's theory of the case, failure to so instruct is reversible error." *State v. Brown*, 1996-NMSC-073, ¶ 34, 122 N.M. 724, 931 P.2d 69. A party is entitled to submit instructions to the jury when the instruction is supported by the evidence. *Abeyta*, 120 N.M. at 239, 901 P.2d at 170. As jury instructions on lesser included offenses are given only when there is "some view of the evidence that could sustain a finding that the lesser offense was the highest degree of crime committed[,]" *Romero*, 2005-NMCA-060, ¶ 8; *see also State v. Rudolfo*, 2008-NMSC-036, ¶ 27, 144 N.M. 305, 187 P.3d 170 ("If any reasonable minds could differ, the instruction should be given."), we now review the evidence presented "in the light most favorable to the giving of the requested instruction." *Romero*, 2005-NMCA-060, ¶ 18.

**{26}**     The most favorable version of the evidence in support of Defendant was his own testimony. Defendant admitted that three shots were fired, and that he fired the second and third shots at Victim. Defendant testified that the first shot was fired as a result of a struggle between himself and Victim after Victim held a gun to Defendant's head. Defendant claimed that the struggle ended when "[he] reached as fast as [he] could to grab and [he] pushed the gun and a flash of light came out [of] the weapon[.]" Even viewing the evidence in the light most favorable to Defendant, the testimony that he "reached" for, "grabbed," and "pushed" the gun are not demonstrative of a mental state of criminal negligence. *Compare Salazar*, 1997-NMSC-044, ¶ 57 (finding that the requested involuntary manslaughter jury instruction was properly denied, in part because it described an intentional act by the defendant); *and Pruett*, 27 N.M. at 577-78, 203 P. at 840-41 (finding that the jury was improperly instructed on involuntary manslaughter when the evidence established that the defendant fired intentionally in self-defense); *with Lucero*, 2010-NMSC-011, ¶ 15 (holding that the jury was properly instructed on involuntary manslaughter, and not self-defense, because the defendant produced no evidence that he fired the gun intentionally); *and*

8

*Romero*, 2005-NMCA-060, ¶ 17 (finding that an involuntary manslaughter jury instruction should have been given where the defendant presented evidence of criminal negligence in his exercise of self-defense). Defendant's testimony would establish either that the shooting was accidental, and the trigger may have been pulled by Victim, in which case Defendant was not criminally negligent, or that Defendant reached for the gun and intentionally pulled the trigger, in which case Defendant did not act unintentionally. In neither view of the evidence did Defendant act with criminal negligence, that is, with a willful disregard of the risk created by his actions that resulted in the unintentional killing of Victim. Nor did Defendant act with criminal negligence in firing the second or third shots, on which he testified firing at Victim. *See Salazar*, 1997-NMSC-044, ¶ 57 (stating that the defendant's testimony that he was "[s]hooting at" the victim "suggests, to a certain degree, an intentional act, and wrongly describes the mens rea associated with involuntary manslaughter"); *Abeyta*, 120 N.M. at 242-43, 901 P.2d at 173-74. Trial testimony did not establish which shot was fatal; the crucial point here, however, is that it also did not support the claim that Defendant's actions were criminally negligent at the moment he fired any of the three shots.

**{27}** We conclude that the district court did not err in denying the involuntary manslaughter jury instruction because the evidence viewed in the light most favorable to Defendant fails to demonstrate that Defendant had the requisite mens rea of criminal negligence when the three shots, of which one was fatal, were fired at Victim. *See Gaitan*, 2002-NMSC-007, ¶ 17 (holding that the district court did not err by refusing to issue a jury instruction that was not supported by the evidence); *see also State v. Hayes*, 77 N.M. 225, 226, 421 P.2d 439, 439 (1966) (reversing an involuntary manslaughter conviction because evidence did not show requisite state of mind, defined by the court as "heedlessness or reckless disregard of the right of others").

### III.    Conclusion

**{28}** The evidence presented at trial did not support issuing Defendant's proposed involuntary manslaughter jury instruction. The Court of Appeals Memorandum Opinion is reversed and Defendant's conviction is reinstated.

**{29}    IT IS SO ORDERED.**

_____
 **PATRICIO M. SERNA, Justice**


**WE CONCUR:**

_____
**CHARLES W. DANIELS, Chief Justice**

_____

9

**PETRA JIMENEZ MAES, Justice**

_____

**RICHARD C. BOSSON, Justice**

_____

**EDWARD L. CHÁVEZ, Justice**

**Topic Index for _State v. Henley_, Docket No. 31,218**

CL-CM      Criminal Negligence
CL-EL      Elements of Offense
CL-HO      Homicide
CL-IV      Involuntary Manslaughter

CA-JI      Jury Instructions

JI-CJ      Criminal Jury Instructions
JI-IJ      Improper Jury Instructions