This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-36700**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**FRANCISCO CAMPOS,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DONA ANA COUNTY**
**Fernando R. Macias, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Meryl E. Francolini, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**ATTREP, Judge.**

**{1}** Defendant Francisco Campos appeals his conviction for second-degree murder, contrary to NMSA 1978, Section 30-2-1(B) (1994). Defendant argues that (1) the district court erred by denying his request for an involuntary manslaughter jury instruction, and (2) there was insufficient evidence to support the jury's conviction. Concluding the district court erred in failing to give the requested involuntary manslaughter instruction, we reverse and remand for a new trial.

## BACKGROUND

**{2}** Defendant stabbed Ruben Moreno (Victim) with a large kitchen knife late the night of May 21, 2016. Among those present the night of the stabbing were Defendant, Jose Franco, Martin Diaz, and Victim, as well as Defendant's wife and small child. The stabbing stemmed from a conflict between Defendant and Franco, who was Defendant's former boss. That night, Franco and Victim were on the premises of a motel, where Victim and Defendant both lived. When Franco encountered Defendant at the motel, a disagreement arose over unpaid wages Franco owed to Defendant. Defendant and Franco continued their disagreement and ultimately agreed to fight each other, which prompted Defendant to go upstairs and put on his shoes. The facts are disputed as to whether Defendant returned with a knife or if he found the knife lying on the ground where the fight was going to happen.

**{3}** There was also conflicting testimony as to whether Defendant intentionally or accidentally stabbed Victim. Defendant gave a statement to police that he accidentally stabbed Victim as Victim attempted to defuse the conflict between Defendant and Franco. Franco and Diaz, who testified on behalf of the State, stated that Defendant walked directly up to Victim and, without saying anything, stabbed him under the armpit. Victim later died from the stab wound to his abdomen.

**{4}** Defendant was tried and convicted for second-degree murder, and he now appeals his conviction.

## DISCUSSION

### I.     Involuntary Manslaughter Instruction

**{5}** Defendant argues the district court erred in denying his request for a lesser included offense instruction of involuntary manslaughter. For the reasons that follow, we agree. "The propriety of jury instructions denied or given involves mixed questions of law and fact that we review de novo." *State v. Skippings*, 2011-NMSC-021, ¶ 10, 150 N.M. 216, 258 P.3d 1008. "When evidence at trial supports the giving of an instruction on a defendant's theory of the case, failure to so instruct is reversible error." *State v. Henley*, 2010-NMSC-039, ¶ 25, 148 N.M. 359, 237 P.3d 103 (internal quotation marks and citation omitted). A defendant is entitled to jury instructions on a lesser included offense "when there is some view of the evidence that could sustain a finding that the lesser offense was the highest degree of crime committed." *Id.* (internal quotation marks and citation omitted). "If any reasonable minds could differ, the instruction should be given." *Id.* (internal quotation marks and citation omitted). "When considering a defendant's requested instructions, we view the evidence in the light most favorable to the giving of the requested instructions." *Skippings*, 2011-NMSC-021, ¶ 10 (alteration, internal quotation marks, and citation omitted).

**{6}** Involuntary manslaughter is an unintentional killing resulting from one of the following courses of conduct: (1) "the commission of an unlawful act not amounting to a

felony;" (2) "the commission of a lawful act that might produce death, in an unlawful manner;" or (3) "the commission of a lawful act that might produce death without due caution and circumspection." *State v. Salazar*, 1997-NMSC-044, ¶ 54, 123 N.M. 778, 945 P.2d 996; *see also* NMSA 1978, § 30-2-3(B) (1994) (defining involuntary manslaughter). Regardless of the course of conduct, "the [s]tate must show at least [a mens rea of] criminal negligence to convict a criminal defendant of involuntary manslaughter." *Skippings*, 2011-NMSC-021, ¶ 18. (internal quotation marks and citation omitted). "Criminal negligence exists where the defendant acts with willful disregard of the rights or safety of others and in a manner which endangers any person or property." *Id.* (alterations, internal quotation marks, and citation omitted); *see also* UJI 14-133 (defining negligence). In addition, "the defendant must possess subjective knowledge of the danger or risk to others posed by his or her actions." *Skippings*, 2011-NMSC-021, ¶ 18 (internal quotation marks and citation omitted). In contrast to involuntary manslaughter, "an accidental killing is *excusable* because it is an unintended homicide which occurs in the course of performing a lawful act, without criminal negligence." *State v. Lucero*, 2010-NMSC-011, ¶ 13, 147 N.M. 747, 228 P.3d 1167 (internal quotation marks and citation omitted).

**{7}**     The parties on appeal do not dispute whether sufficient facts supported a finding by the jury that the killing was unintentional, nor do they dispute that Defendant's action of picking up the knife was lawful; instead, they dispute whether there was sufficient evidence of criminal negligence. Defendant argues he was entitled to an involuntary manslaughter instruction because a jury could have determined he acted with willful disregard of Victim's or another's safety by picking up a knife without due caution or circumspection.[1] The State argues there was no evidence of criminal negligence and so Defendant's theory of an unintentional killing without the requisite mens rea did not support the giving of the instruction. We conclude that, when viewing the evidence in the light most favorable to giving the instruction, as we must, sufficient evidence was presented to support a finding by the jury of criminal negligence. Consequently, the district court erred by not instructing the jury on involuntary manslaughter.

**{8}**     The most favorable version of the evidence in support of the involuntary manslaughter instruction came from a recorded police interview of Defendant, which was admitted into evidence. *See Henley*, 2010-NMSC-039, ¶ 26 (reviewing the most favorable version of the evidence). The below recitation of facts is derived largely from Defendant's statements during that interview. Prior to encountering Defendant at the motel, Franco and Victim had been drinking and Defendant described Franco as drunk. Defendant and Franco argued about how much money Franco owed Defendant. During the verbal argument, Franco told Defendant that "you're not worth a fuck," and Defendant described that Franco "just kept nitpicking." At some point, the two men decided to physically fight, and Defendant then went upstairs to put on his shoes.[2]

---

1Because we determine that the jury instruction should have been given on this basis, we do not address Defendant's alternative theory that the instruction was appropriate because it occurred due to "an unlawful act not amounting to [a] felony," i.e., a battery or attempted battery. Section 30-2-3(B).

2Although we present the following events in sequential fashion, we note that in giving his statement, Defendant did not provide these facts in any particular chronological order.

When he came downstairs, the men were standing in a circle. Defendant observed a knife on the ground and saw others "going for it," so Defendant kicked the knife and then picked it up himself. Defendant did so because he "didn't want to get stuck by nobody" and his daughter was there and he "didn't want her picking nothing up." Defendant had intended to give the knife to his wife. But soon after grabbing the knife, Franco came at Defendant, and Defendant attempted to block Franco while still holding the knife. Victim interjected himself in an attempt to break up the fight and he was stabbed. And while Defendant described everything as happening so fast, Defendant claimed that Franco armed himself with a large rock after Defendant grabbed the knife, at which point Defendant's wife told him to "behave" and Defendant responded "I'm behaving." When Defendant realized that Victim was stabbed, he asked Victim, "oh shit are you alright, man?" Defendant did not continue to fight; he stood there for a while and then walked away. Defendant told police that the stabbing was an accident and he had no intention of hurting Victim.

**{9}** This evidence supports the view that Defendant acted with a willful disregard for the safety of others and had the requisite subjective knowledge. As for subjective knowledge, Defendant said that he kicked the knife and picked it up so he would not get stabbed and his daughter would not get injured. These statements show that Defendant understood he or another could be injured by the knife given the circumstances. From this, a rational jury could infer Defendant possessed the subjective knowledge of the danger posed to others by picking up the knife. *See Skippings*, 2011-NMSC-021, ¶ 19 ("[The d]efendant's subjective knowledge of the danger posed by his conduct could be inferred by a rational jury from the evidence presented."). In fact, the State acknowledges as much when addressing Defendant's sufficiency argument—writing, "Defendant's claim . . . that he kicked the knife away from the other men and picked it up so that *he* would not 'get stuck' with it demonstrates that Defendant knew the knife, when used as a weapon, presented a strong probability of death or great bodily harm to human beings."

**{10}** Notwithstanding the fact that Defendant appreciated the danger posed to himself and others, he chose to pick up the knife on the verge of a fight instead of choosing some other course of action such as disengaging from the fight. *See Henley*, 2010-NMSC-039, ¶ 16 ("To be convicted of involuntary manslaughter, a defendant must have been aware of the risk caused by his or her conduct and continued to act."). And although Defendant said he picked up the knife to keep himself or others out of harm's way, this is not dispositive of criminal negligence. It is well understood that physical altercations, especially those involving intoxicated individuals, present perilous and volatile situations. *See Skippings*, 2011-NMSC-021, ¶ 19 (noting that, notwithstanding the defendant's statements to the contrary, "a jury could conclude that [the d]efendant was aware of the danger or risk to others posed by his actions when he caused [the v]ictim to fall on the hard asphalt, a commonly understood peril" (omission and internal quotation marks omitted)). Indeed, in this case, Defendant's introduction of the knife into the fight had the rather predictable consequence of escalating the confrontation—Franco armed himself and came at Defendant, Victim attempted to break things up, and Victim was stabbed. Under these circumstances, a jury reasonably could have

concluded that Defendant's action of picking up a knife on the verge of a fight manifested disregard of the risk that someone would be stabbed because of his actions. *See id.* ("Ample evidence was provided to support the view that [the d]efendant engaged in the dispute and behaved in a fashion that exposed [the v]ictim to danger without intending her death. Based on this evidence, the jury could reasonably have concluded that [the d]efendant demonstrated a willful disregard of [the v]ictim's safety.").

**{11}** In arguing to the contrary, the State contends the facts at issue in this case are akin to those in *Henley*, in which our Supreme Court held an involuntary manslaughter instruction was unwarranted.[3] 2010-NMSC-039, ¶ 28. Under the defendant's version of events in *Henley*, the victim was trying to rob the defendant when the victim put a gun to the defendant's head. *Id.* ¶ 5. "A struggle ensued, and, afraid for his own life, [the d]efendant reached as fast as he could to grab [the gun] and he pushed the gun and a flash of light came out of the weapon." *Id.* (alterations and internal quotation marks omitted). The defendant then gained control of the gun and fired at the victim two more times. *Id.* In relevant part, the jury was instructed on second-degree murder, voluntary manslaughter, and self-defense. *Id.* ¶ 9. The defendant was convicted of voluntary manslaughter. *Id.* On appeal, the defendant argued the jury should have been instructed on involuntary manslaughter. *Id.* The Court first clarified that involuntary manslaughter requires a mens rea of criminal negligence and that imperfect self-defense, an intentional act, is no substitute for criminal negligence. *Id.* ¶¶ 20, 24. The Court then examined the evidence to determine if it supported a finding that the defendant acted with criminal negligence. *Id.* ¶ 26. In concluding it did not, the Court reasoned that, although the defendant's testimony might establish that the shooting was accidental—occurring during the struggle over the gun and perhaps as a result of the victim pulling the trigger—it did not establish a willful disregard of the risk created by the defendant's actions. *Id.* Under the facts of *Henley*, in which the defendant had no role in introducing the deadly weapon and struggled for control of the weapon in the face of an imminent threat of death or great bodily injury, the Court's conclusion that the defendant's actions, if believed, amounted to an excusable accidental killing, and not an act of criminal negligence, is sound.

**{12}** The facts in *Henley*, however, are in contrast to this case. Defendant here was not faced with an imminent threat of death or great bodily injury when the knife lay on the ground. Nonetheless, Defendant chose to pick up the knife on the verge of a fight, knowing the dangers his actions presented. If Defendant's version of events were accepted by the jury, reasonable minds could differ as to whether picking up the knife on the verge of a fight was criminally negligent. *Skippings*, 2011-NMSC-021, ¶ 17 ("[S]ufficient evidence was presented to the jury to allow reasonable minds to differ

---

3To the extent the State contends that *Henley* forecloses Defendant from arguing alternative theories of accidental homicide and involuntary manslaughter, our Supreme Court has since clarified there is no such impediment. Where, as here, "evidence of the mens rea of both accident and involuntary manslaughter is presented to the jury[,] . . . the two theories . . . can properly be placed before the jury." *Skippings*, 2011-NMSC-021, ¶ 22 (emphasis omitted) (distinguishing *Henley* and "clarify[ing] that accident and involuntary manslaughter are compatible, although competing, explanations of the same event"). That Defendant alternatively argues the evidence supported an accidental killing does not undermine his request for an involuntary manslaughter instruction.

regarding whether [the d]efendant possessed the required criminal negligence to support giving an involuntary manslaughter instruction."); *cf. State v. Lucero*, 2010-NMSC-011, ¶¶ 3, 4, 6, 22, 147 N.M. 747, 228 P.3d 1167 (upholding the defendant's involuntary manslaughter conviction, and affirming denial of a self-defense instruction, where the defendant brought a pistol to a confrontation and the defendant unintentionally shot the victim); *State v. Gallegos*, 2001-NMCA-021, ¶ 15, 130 N.M. 221, 22 P.3d 689 (noting that, where the defendant introduced a pistol into an altercation but testified she did not intend for the gun to go off, a jury could convict the defendant of involuntary manslaughter "if the jury found that the gun discharged accidentally due to some negligence on [the d]efendant's part" and "that a reasonable person in the same circumstances would have taken care that the gun did not discharge").

**{13}** Because sufficient evidence supported a finding by the jury that Defendant acted with criminal negligence, we conclude that the involuntary manslaughter instruction should have been given. *See State v. Cardenas*, 2016-NMCA-042, ¶ 21, 380 P.3d 866 (concluding that "[b]ecause the jury could have found that [the d]efendant committed a lawful act, and unintentionally killed the victim while acting criminally negligently, . . . an involuntary manslaughter instruction [under the third category] should have been given"). We therefore reverse and remand for a new trial.

## II.     Sufficiency of the Evidence

**{14}** We turn next to whether there was sufficient evidence to support Defendant's conviction for second-degree murder. We do so "because [the d]efendant asserts the evidence was insufficient and because this Court must address sufficiency in order to determine whether retrial would offend principles of double jeopardy." *State v. Schwartz*, 2014-NMCA-066, ¶ 30, 327 P.3d 1108; *see also State v. Cabezuela*, 2011-NMSC-041, ¶ 47, 150 N.M. 654, 265 P.3d 705 ("Because we find that there was sufficient evidence to convict [the d]efendant, . . . retrial is not barred by double jeopardy implications."). To review the sufficiency of the evidence, we must evaluate whether substantial evidence, direct or circumstantial, supports a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction. *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056. We review the "evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Torrez*, 2013-NMSC-034, ¶ 40, 305 P.3d 944 (internal quotation marks and citation omitted).

**{15}** "Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Jackson*, 2018-NMCA-066, ¶ 22, 429 P.3d 674 (internal quotation marks and citation omitted). To convict Defendant of second-degree murder, the State was required to prove beyond a reasonable doubt that: (1) Defendant killed Victim; (2) Defendant knew that his acts created a strong probability of death or great bodily harm to Victim or any other human being; (3) this happened in New Mexico on or about the 21st day of May, 2016. *See* UJI 14-211 NMRA. Defendant contends only that there was insufficient evidence to support the second element, and we limit our analysis accordingly.

**{16}** Ample evidence supported the second element. At trial, there was testimony that Defendant wanted to fight Franco, then came downstairs armed with a knife, approached Victim, and, without saying anything, stabbed him. Defendant then left the scene and disposed of the knife. *See State v. Flores*, 2010-NMSC-002, ¶ 19, 147 N.M. 542, 226 P.3d 641 (stating that "intent is subjective and is almost always inferred from other facts in the case" (alteration, internal quotation marks, and citation omitted)). This is sufficient for the jury to infer that Defendant knew his actions would cause death or great bodily harm to Victim. Although Defendant points to evidence that may provide a different explanation of the incident—that the stabbing of Victim was accidental and he never intended to hurt anyone—the jury was free to reject Defendant's version of the facts. *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 ("Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts."). Indeed, it is for the jury to resolve conflicts in the testimony and determine the weight of the evidence and credibility of the witnesses. *State v. Simmons*, 2018-NMCA-015, ¶ 13, 409 P.3d 1030 ("We defer to the fact-finder when it weighs the credibility of witnesses and resolves conflicts in witness testimony." (internal quotation marks and citation omitted)).

**{17}** We therefore conclude sufficient evidence supports Defendant's conviction for second-degree murder, and retrial is not barred by double jeopardy.

**CONCLUSION**

**{18}** For the foregoing reasons, we reverse Defendant's conviction for second-degree murder and remand for a new trial consistent with this opinion.

**{19}  IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**BRIANA H. ZAMORA, Judge**