This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-39411**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**XAVION M.,**

Child-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Sarah V. Weaver, District Judge**

Hector H. Balderas, Attorney General
Laurie Blevins, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**BACA, Judge.**

**{1}** Following a jury trial, Xavion M. (Child) was found guilty of involuntary manslaughter, contrary to NMSA 1978, Section 30-2-3(B) (1994) and negligent use of a deadly weapon, contrary to NMSA 1978, Section 30-7-4(A)(3) (1993). On appeal, Child argues that his convictions are not supported by sufficient evidence and violate double jeopardy. For the reasons that follow, we affirm in part and reverse in part.

## BACKGROUND

**{2}** Late on the night of December 13, 2019, Elijah C. (Victim) and a group of their teenaged friends were listening to music, drinking alcohol, smoking, and taking Xanax at their friend Josh J.'s house. While they were at the house, Josh J. had an AR-15 rifle in his room. Child, Victim, and others left the house in Victim's car to go shoot the AR-15 at a "view" near Farmington.

**{3}** On the drive back from shooting the AR-15, Child was sitting in the back seat of Victim's car holding the rifle. The rifle discharged and shot a hole in the roof of the car. The teenagers drove back to Josh J.'s home and parked on the street near the house. Child got out of the car to use the restroom. When he returned to the car, he noticed that the clip of the AR-15 had been removed. Child asked to see the rifle again and while he was holding it pointed downward toward the driver's seat of the occupied car, he pulled the trigger, firing a bullet into the driver's seat where Victim was seated. During his interview Child stated, "Whenever I grabbed it, there was no clip in it. I pulled the trigger . . . and it just went boom and me and J.J. were just like, what the fuck, like, I was like there's nothing. There's no clip in it." He then asked if anyone had "put one in the head" when he left to go to the restroom, but no one would answer him.

**{4}** Child did not believe the bullet had gone through the driver's seat or had struck Victim because there was no hole in the front of the seat and it appeared that Victim had only a "scratch" on his back. Despite offers to call for help, Victim declined medical attention. Instead, one of the other friends called Victim's father to pick him up. Victim's father was told that he needed to pick up Victim because he was drunk. Victim's father arrived and picked him up. Upon father's arrival, no one told him that Victim had been shot. Victim's father took Victim home and Victim laid down. Father left the house to go help a friend and when Victim's brother checked on Victim a second time, he was unresponsive. Victim's brother then called their father to come back home as soon as possible because Victim was not breathing. Victim's father returned home and called 911. Victim was later pronounced dead.

**{5}** The Office of the Medical Investigator (OMI) at the University Of New Mexico School of Medicine conducted an autopsy of Victim's body and found a single gunshot wound to Victim's back and a large amount of blood in Victim's abdominal cavity. OMI determined that the cause of Victim's death was an accidental gunshot wound to his back. Child was subsequently charged with involuntary manslaughter and negligent use of a deadly weapon. Following a jury trial, Child was convicted of both charges and now appeals.

**DISCUSSION**

**I.    Child's Conviction for Negligent Use of a Deadly Weapon and Involuntary Manslaughter Violates Double Jeopardy**

**{6}** Child first argues, and the State concedes, that his convictions for involuntary manslaughter and negligent use of a deadly weapon violate double jeopardy and require us to vacate his conviction for negligent use of a deadly weapon. While we are

not bound by the State's concession, *State v. Tapia*, 2015-NMCA-048, ¶ 31, 347 P.3d 738, we accept the concession because we conclude that our precedent and the record in this case supports it. *See State v. Swick*, 2012-NMSC-018, ¶ 27, 279 P.3d 747 (quoting *Swafford v. State*, 1991-NMSC-043, ¶ 30, 112 N.M. 3, 810 P.2d 1223) (stating that when one charges elements are " 'subsumed within the [other charges]' elements . . . the double jeopardy prohibition is violated, and 'punishment cannot be had for both' "); *cf. State v. Frazier*, 2007-NMSC-032, ¶ 1, 142 N.M. 120, 164 P.3d 1 (holding that when a defendant is convicted of felony murder, "the predicate felony is always subsumed into a felony murder conviction, and no defendant can be convicted of both"). Further, Defendant's conviction for both involuntary manslaughter and negligent use of a firearm violates our Supreme Court's double description precedent because Defendant's conduct was unitary here. *See State v. Silvas*, 2015-NMSC-006, ¶ 10, 343 P.3d 616 (stating that "[c]onduct is unitary when not sufficiently separated by time or place, and the object and result or quality and nature of the acts cannot be distinguished").

**{7}** Because the Legislature created the involuntary manslaughter statute whereby the manslaughter must occur during "the commission of an unlawful act not amounting to felony," Section 30-2-3(B), the underlying conduct is subsumed into the involuntary manslaughter conviction. *See Frazier*, 2007-NMSC-032, ¶ 59 (Chavez, C.J., specially concurring) (noting that under the felony murder statute, the predicate felony is part of the "same act or transaction" as the murder (internal quotation marks omitted)). In this case, Child's negligent use of a deadly weapon conviction is subsumed into the first element of the involuntary manslaughter instruction that Child "handled or used a firearm in a negligent manner[.]" Therefore, we conclude that Child's conviction for negligent use of a deadly weapon violates double jeopardy and must be vacated. *See State v. Montoya*, 2013-NMSC-020, ¶ 55, 306 P.3d 426 (holding that when two convictions violate double jeopardy, the conviction carrying the shorter sentence is vacated).

## II. Sufficient Evidence Supports Defendant's Conviction

**{8}** Child argues there is insufficient evidence to support his conviction for involuntary manslaughter. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Ford*, 2019-NMCA-073, ¶ 7, 453 P.3d 471 (internal quotation marks and citation omitted). Under this test, "we view the evidence in the light most favorable to the state, resolving all conflicts and making all permissible inferences in favor of the jury's verdict." *State v. Ledbetter*, 2020-NMCA-046, ¶ 6, 472 P.3d 1287 (alteration, internal quotation marks, and citation omitted). "Our appellate courts will not invade the jury's province as fact-finder by second-guessing the jury's decision concerning the credibility of witnesses, reweighing the evidence, or substituting its judgment for that of the jury." *State v. Gwynne*, 2018-NMCA-033, ¶ 49, 417 P.3d 1157 (internal quotation marks and citation omitted). "Jury instructions become the law of the case against which

the sufficiency of the evidence is to be measured." *State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883.

{9}    Our Legislature has defined involuntary manslaughter as "the unlawful killing of a human being without malice . . . committed in the commission of an unlawful act not amounting to felony, or in the commission of a lawful act which might produce death in an unlawful manner or without due caution and circumspection." Section 30-2-3(B). Manslaughter is an unintentional killing: the defendant's conduct resulted in Victim's death, but the defendant did not intend Victim's death. *See State v. Henley*, 2010-NMSC-039, ¶ 14, 148 N.M. 359, 237 P.3d 103. Our courts have interpreted this statutory scheme to encompass unintentional killings that result due to (1) "the commission of an unlawful act not amounting to a felony [that causes death]"; (2) "the commission of a lawful act that might produce death, in an unlawful manner"; or (3) "the commission of a lawful act that might produce death without due caution and circumspection." *Id.* (internal quotation marks and citation omitted).

{10}    Our courts have recognized that the "required mens rea for a conviction of involuntary manslaughter is criminal negligence." *Id.* ¶ 15. Any misdemeanor requiring a showing of at least criminal negligence can serve as the predicate unlawful act for involuntary manslaughter. *See State v. Yarborough*, 1996-NMSC-068, ¶ 20, 122 N.M. 596, 930 P.2d 131. Criminal negligence requires "subjective knowledge by the defendant of the danger or risk to others posed by his or her actions." *Henley*, 2010-NMSC-039, ¶ 17. Criminal negligence exists "when a person 'acts with willful disregard of the rights or safety of others and in a manner which endangers any person or property.' " *Id.* ¶ 16 (quoting UJI 14-133 NMRA) (alteration omitted). "Likewise, the instruction on involuntary manslaughter states that the defendant 'should have known of the danger involved by [his or her] actions[.]' " *Id.* (quoting UJI 14-231 NMRA).

{11}    At trial, the jury was instructed, in part, that to find Child guilty of involuntary manslaughter, the State had to prove the following elements beyond a reasonable doubt:

1.    [Child] handled or used a firearm in a negligent manner;

2.    [Child] should have known of the danger involved by [his] actions;

3.    [Child] acted with a willful disregard for the safety of others; [and]

4.    [Child's] act caused the death of [Victim.]

Child argues there was insufficient evidence presented at trial to satisfy the first, second, and third elements of the jury instruction.

{12}    As to the first element, Child argues that the evidence "established that he pointed the gun with the magazine removed toward the ground and unintentionally pulled the trigger[,]" therefore, there is insufficient evidence to support this element.

Child supports this contention by arguing that the State stipulated that "the trigger was not intentionally pulled." At trial, the State presented evidence that Child pulled the trigger of the AR-15 with the magazine removed while he was inside Victim's car. The Child did this without first checking to see if a round was in the chamber and while being aware that the rifle could be fired even with the magazine being removed from the weapon.[1] The State also presented evidence that Child shot a hole in the roof of Victim's car earlier in the night while holding the AR-15, while seated in the back seat of a moving car next to several other teenagers. The jury also heard testimony that the teenagers, including Child, were drinking on the night of the incident. These actions, in the aggregate, present substantial evidence that Child was negligent in his use of a firearm.

{13}    Moving to the second element, Child argues that he could not have known how dangerous his actions were because the AR-15 he fired "is complicated in its action" and "[i]ts proper use is not intuitive or immediately evident to the untrained." The evidence at trial established that child was sufficiently acquainted with the AR-15 and firearms such that he knew how the AR-15 operated. A week prior to the shooting of Victim, Child saw Josh J.'s father fire an AR-15 rifle. Child also previously shot a .22 caliber rifle and a 12-guage shotgun a week prior to the night Victim was shot. On the night of the incident, within hours of the shooting of Victim, Child shot the AR-15 himself. Child, while holding the AR-15, caused the rifle to fire a bullet through the roof of Victim's car while he was in a car full of teenagers on the way back to Josh J.'s house from the view. And, on the night Victim was shot, upon returning from the restroom and being handed the AR-15, Child, seeing that the magazine was missing from the rifle, knew enough about the operation of an AR-15 to ask if it was unloaded despite the magazine being removed from the weapon. Child asked if anyone "had put one in the head." Based upon these facts, the jury could have made a reasonable inference that Child should have known how dangerous it was to pull the trigger of the rifle when he got back in the car. *See Slade*, 2014-NMCA-088, ¶ 14 (a reasonable inference is "a conclusion arrived at by a process of reasoning which is a rational and logical deduction from facts admitted or established by the evidence"). While Child's arguments on the complexity of an AR-15 point to facts that contradict evidence established through testimony at trial, "[c]ontrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject Defendant's version of the facts." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

{14}    Finally, Child argues that the State failed to prove that he acted with a willful disregard for the safety of others. We are unpersuaded. The State presented evidence that Child was holding a loaded AR-15 on the way back from shooting it inside a vehicle with five other teenagers. The State presented evidence that while Child was holding the AR-15, he shot a hole through the roof of Victim's car. To shoot the bullet through the roof, Child had to have his finger on the trigger while all six teenagers were in a

---

[1]Recall Child's statement that after being handed the weapon without the magazine attached, he asked if anyone had "put one in the head" meaning whether a round had been loaded in the chamber of the AR-15. This statement demonstrates Child's knowledge that a live round could be in the chamber of the rifle and fired even though the magazine was not attached to the weapon.

moving car. The evidence also established that Child was aware that the AR-15 could still be loaded and fired even though the magazine was removed. Recall, again, the testimony regarding Child asking if the rifle had a bullet in the chamber even though the magazine was removed. Child asked the others present if "anyone put one in the head." As well, the jury heard testimony that Child handled the AR-15 after he consumed alcohol. Finally, Child handled the AR-15 in a manner that caused him to pull the trigger of the rifle while seated in a car full of teenagers and while the rifle was pointed toward the Victim, shooting the Victim in the back while Victim was seated in the driver's seat of his own car. From these facts, the jury could have made a reasonable inference that Child acted with a willful disregard for the safety of others—satisfying the third element of the jury instructions. *See State v. Skippings*, 2011-NMSC-021, ¶¶ 18-19, 150 N.M. 216, 258 P.3d 1008 (explaining that the defendant acted with willful disregard for the victim's safety following "a verbal quarrel that escalated into a physical confrontation" that resulted in the victim's death because evidence established that the defendant "exposed [the v]ictim to danger without intending" the victim's death).

**{15}**    For these reasons, we hold there was sufficient evidence presented to support Child's conviction for involuntary manslaughter.

**CONCLUSION**

**{16}**    For the reasons stated above, we vacate Child's conviction for negligent use of a deadly weapon, remand for resentencing of Child, and affirm Child's conviction for involuntary manslaughter.

**{17}    IT IS SO ORDERED.**

**GERALD E. BACA, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**ZACHARY A. IVES, Judge**