This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Filing Date: November 10, 2025**

**No. S-1-SC-40471**

**STATE OF NEW MEXICO,**

> Plaintiff-Appellee,

v.

**EZEQUIEL PROFETA RICOY,**

> Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LUNA COUNTY**
**Jennifer E. DeLaney, District Judge**

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

Raúl Torrez, Attorney General
Benjamin L. Lammons, Assistant Solicitor General
Santa Fe, NM

for Appellee

**DECISION**

**ZAMORA, Justice.**

**I.      INTRODUCTION**

**{1}**    Defendant, Ezequiel Ricoy, appeals his conviction for first-degree willful and deliberate murder, contrary to NMSA 1978, Section 30-2-1(A)(1) (1994), arising from the fatal shooting of his stepson, Brendan Kern (Victim). Defendant argues that this Court must vacate his conviction because (1) there was insufficient evidence of deliberate intent; (2) the district court failed to instruct the jury on self-defense, voluntary manslaughter, and defense of habitation; and (3) he received ineffective assistance of

counsel. We affirm Defendant's convictions and exercise our discretion to decide this appeal by nonprecedential decision because the issues have been previously decided by this Court. *See* Rule 12-405(B)(1) NMRA.

## II.    BACKGROUND

**{2}**    Defendant was Victim's stepfather, having recently married Victim's mother, Kelly Kern. Defendant and Kelly resided together in Victim's childhood home. Kelly had multiple sclerosis, was unable to walk, and used a wheelchair. About a week before Defendant killed Victim, Defendant hired Victim to help him renovate a trailer and the two traveled to the worksite together with Kelly. However, a few days after beginning work, Defendant fired Victim after the two got into an argument because Victim wanted to take his own vehicle and a television to the worksite. Prior to being fired, Victim anticipated that the two would continue to work together and left his cooler in Defendant's truck. After firing Victim, Defendant expressed a dislike for Victim, stating that Victim and his siblings were "useless" and that Defendant did not like how they treated Kelly.

**{3}**    On the day Victim was fatally shot, Kelly was at home with Defendant and Defendant's daughter, Katrina Ricoy. Kelly spoke to Victim's fiancée, Emili Jones, and told Emili that she and Victim could come over to pick up the cooler that was left behind in Defendant's truck and that the cooler would be placed outside. Only after Victim had almost arrived did Defendant express his disagreement with the arrangement.

**{4}**    Shortly after her phone call with Kelly, Emili arrived with Victim, their two minor children, and Victim's friend Jaime. Not knowing anything was amiss, Emili exited the vehicle and approached the home in search of the cooler, calling Kelly again after arriving. Victim stayed in the vehicle with Jaime and the two children.

**{5}**    At some point between Kelly's and Emili's first and second phone calls, Defendant went outside. Upon reentering the home, Defendant continued to protest Victim coming to the property, telling Kelly that he did not want her son there and that he did not want "any Kerns," meaning any of her children, on the property. Emili was on the phone with Kelly and overheard Defendant's statements. Defendant then began screaming into the phone and told Emili that she would "regret ever coming" to the home. Recognizing Defendant was angry, Emili began walking away from the home towards her vehicle, intending to leave. She ended the call with Kelly.

**{6}**    Back inside the home, Defendant retrieved an AR-15 assault rifle. When Kelly reached for his arm in an attempt to stop him from going outside, Defendant "shrugged [her] off." Defendant returned to the porch and opened fire as Emili continued to move towards her vehicle. Victim only exited the vehicle after Defendant had fired several shots. Victim crossed paths with Emili as she ran back to the vehicle, and Victim pushed her behind him. Emili continued running to the vehicle. Victim then raised both of his hands and said to Defendant, "We're leaving."

**{7}**    Defendant continued to fire additional shots and, while Victim was ten to thirty feet away from Defendant, two bullets fatally struck Victim in the chest and neck. In total, Defendant fired nine shots, several of which also struck the front of Victim's

vehicle. While on the phone with a 911 dispatcher, Emili asked Defendant what size caliber the bullets were. Defendant responded "that's none of your f***ing business" and laughed. Later, while speaking to an officer on the scene, Defendant referred to Victim and his family as "arrogant pricks" for coming onto the property despite his warnings.

{8}     Defendant told police Victim had two things in his hands that Defendant was unable to identify. It was later determined that Victim had an aluminum energy drink can in one hand and a cell phone in the other. According to Defendant, Victim charged at him. Defendant stated he was scared of being beaten up by Victim, who was taller and younger than him.

{9}     Defendant was arrested and charged with first-degree willful and deliberate murder, two counts of abuse of a child, aggravated assault, and shooting at or from a motor vehicle. During trial, Defendant requested that the jury be instructed on the lesser included offenses of second-degree murder and voluntary manslaughter, as well as on self-defense. The district court granted Defendant's requested second-degree murder instruction but denied Defendant's requests for voluntary manslaughter and self-defense instructions, concluding that there was insufficient evidence to support giving either instruction. The jury convicted Defendant of first-degree murder, two counts of child abuse not resulting in death or great bodily harm, aggravated assault, and shooting at or from a motor vehicle. Defendant was sentenced to life in prison plus nine years. Defendant timely appealed to this Court.

## III.     DISCUSSION

### A.     Sufficiency of the Evidence

{10}     Defendant argues that there was insufficient evidence to establish the deliberate intent necessary to sustain his first-degree murder conviction. Based on the evidence at trial, the State argues a rational jury could reasonably find Defendant deliberately killed Victim. We agree with the State.

### 1.     Standard of review

{11}     The sufficiency of the evidence is measured against the jury instructions, which "become the law of the case." *State v. Arrendondo*, 2012-NMSC-013, ¶ 18, 278 P.3d 517 (internal quotation marks and citation omitted). Evidence is sufficient when substantial evidence "'exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction.'" *State v. Duran*, 2006-NMSC-035, ¶ 5, 140 N.M. 94, 140 P.3d 515 (quoting *State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314). "We view the evidence as a whole and indulge all reasonable inferences in favor of the jury's verdict." *State v. Graham*, 2005-NMSC-004, ¶ 13, 137 N.M. 197, 109 P.3d 285. "Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject Defendant's version of the facts." *Duran*, 2006-NMSC-035, ¶ 5 (internal quotation marks and citation omitted).

**2. There was sufficient evidence to support the jury's verdict**

**{12}** To establish first-degree willful and deliberate murder under Section 30-2-1(A)(1), the state must prove that the defendant killed another person and that the killing was committed with deliberate intent. *See* UJI 14-201 NMRA. *Deliberate* means "arrived at or determined upon as a result of careful thought and the weighing of the consideration for and against the proposed course of action." *Id.* For a killing to be deliberate, a defendant "must weigh and consider the question of killing and his reasons for and against such a choice." *Id.* Although deliberate intent "may be arrived at in a short period of time[, a] mere unconsidered and rash impulse, even though it includes an intent to kill, is not a deliberate intention to kill." *Id.*

**{13}** Taken together, the State presented sufficient evidence of deliberate intent through evidence that Defendant (1) held animus towards Victim, (2) resisted Kelly's attempts to stop him from going outside with a gun, (3) fired warning shots toward Emili and the vehicle, but specifically targeted Victim, and (4) expressed a lack of remorse after killing Victim.

**{14}** Deliberate intent may be inferred from "the animus of the accused toward the deceased." *State v. Smith*, 1966-NMSC-128, ¶ 13, 76 N.M. 477, 416 P.2d 146; *accord State v. Guerra*, 2012-NMSC-027, ¶ 29, 284 P.3d 1076 (quoting *Smith* to support its reasoning that the defendant's animus towards the victim was relevant to deliberate intent). Animus may be evidenced by "circumstantial evidence of earlier confrontation, threats, . . . or other common areas of friction leading to violence." *State v. Tafoya*, 2012-NMSC-030, ¶ 52, 285 P.3d 604. Here, the State presented evidence of Defendant's animus towards Victim, showing that Defendant fired Victim after a disagreement, spoke poorly about Victim to others, was irate that Kelly gave Victim permission to pick up the cooler, and made a direct threat to Victim's fiancée, Emili.

**{15}** Further evidence of deliberation may be inferred because Defendant ignored Kelly's attempts to stop him from going outside and shrugged her off when she reached for his arm. Additionally, when Defendant exited the home, Defendant only shot Victim and shot him multiple times despite firing a total of nine shots with multiple people in the line of fire. *See State v. Chavez*, 2024-NMSC-023, ¶ 46, 562 P.3d 521. Lastly, the evidence demonstrated deliberate intent because Defendant lacked remorse towards Victim after the shooting based on his responses to Emili as she attempted to render aid and his characterization of Victim as an "arrogant prick" to law enforcement. *See Guerra*, 2012-NMSC-027, ¶ 29, 284 P.3d 1076 (inferring deliberate intent based on the defendant's lack of remorse evidenced by his statement, "I think I stabbed that fool seven or eight times"); *Duran*, 2006-NMSC-035, ¶ 9 (recognizing a jury could infer deliberate intent where the defendant stated that he "murdered some b*tch").

**{16}** Based on the substantial evidence presented in this case showing that Defendant deliberately intended to shoot Victim, we hold that sufficient evidence supported the jury's finding that Defendant was guilty of first-degree willful and deliberate murder.

**B.** **Challenges to the Jury Instructions**

**{17}** Defendant argues that the district court erred in failing to instruct the jury on self-defense, voluntary manslaughter, and defense of habitation. Whether a jury instruction was properly denied is a mixed question of law and fact that this Court reviews de novo. *State v. Gaines*, 2001-NMSC-036, ¶ 4, 131 N.M. 347, 36 P.3d 438. "'When considering a defendant's requested instruction[], we view the evidence in the light most favorable to the giving of the requested instruction[].'" *State v. Boyett*, 2008-NMSC-030, ¶ 12, 144 N.M. 184, 185 P.3d 355 (quoting *State v. Contreras*, 2007-NMCA-119, ¶ 8, 142 N.M. 518, 167 P.3d 966). The applicable standard of review depends on whether the issue was preserved below. *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134. We review preserved challenges for reversible error and unpreserved challenges for fundamental error. *Id.* "Under both standards we seek to determine whether a reasonable juror would have been confused or misdirected by the jury instruction." *Id.* (internal quotation marks and citation omitted).

**1.** **Preserved claims**

**{18}** Defendant argues that the district court erred by not instructing the jury on self-defense or on voluntary manslaughter. Defendant preserved this issue by requesting jury instructions on self-defense and voluntary manslaughter. *See State v. Jernigan*, 2006-NMSC-003, ¶ 10, 139 N.M. 1, 127 P.3d 537. We therefore review these claims for reversible error. *Benally*, 2001-NMSC-033, ¶ 12. Failure to give a requested instruction amounts to reversible error when "a reasonable juror would have been confused or misdirected" by the instruction actually given. *State v. Parish*, 1994-NMSC-073, ¶ 4, 118 N.M. 39, 878 P.2d 988. However, "[f]ailure to instruct the jury on a defendant's theory of the case is reversible error only if the evidence at trial supported giving the instruction." *Boyett*, 2008-NMSC-030, ¶ 12.

**a.** **Defendant was not entitled to a self-defense instruction**

**{19}** Defendant asserts that the district court's failure to instruct the jury on self-defense amounted to reversible error because there was sufficient evidence to support the instruction. The State argues that the "evidence presented at trial was insufficient to merit a self-defense instruction." We agree with the State and hold Defendant was not entitled to an instruction on self-defense.

**{20}** A defendant is entitled to a self-defense instruction when there is sufficient evidence "to allow reasonable minds to differ" as to each of the following elements: (1) "the defendant was put in fear by an apparent danger of immediate death or great bodily harm," (2) "the killing resulted from that fear," and (3) "the defendant acted as a reasonable person would act under those circumstances." *State v. Lopez*, 2000-NMSC-003, ¶ 23, 128 N.M. 410, 993 P.2d 727 (internal quotation marks and citations omitted). The first and second elements are subjective, requiring evidence that the defendant feared immediate death or great bodily harm and acted out of that fear; the third element is objective, requiring that the defendant's fear and action were reasonable. *State v. Coffin*, 1999-NMSC-038, ¶ 15, 128 N.M. 192, 991 P.2d 477.

**{21}** The evidence presented at trial was insufficient to establish that Defendant subjectively feared death or great bodily harm or that the killing resulted from that fear. To argue such fear existed, Defendant points to his statements to police that he did not want Victim—who was younger and larger—to beat him up, that he saw Victim with something in his hands, and that Victim "continued to charge him even after he fired warning shots." Our case law recognizes that the fear of a simple battery, such as getting punched in the face or being beaten up, is not force that ordinarily results in death or great bodily harm. *See State v. Lucero*, 2010-NMSC-011, ¶ 15, 147 N.M. 747, 228 P.3d 1167. Here, Defendant does not point to any evidence in the record to establish that he feared anything beyond a simple battery. Additionally, a difference in size, alone, cannot subjectively establish a fear of death or great bodily harm. *See State v. Duarte*, 1996-NMCA-038, ¶ 10, 121 N.M. 553, 915 P.2d 309. Lastly, while Defendant stated that Victim had "something" in his hands, there is no evidence that Defendant believed the items were weapons or items capable of causing death or great bodily harm. Therefore, when Victim "charged" at Defendant, there is no indication that Defendant had the subjective belief that Victim posed a threat of death or great bodily harm. Because there is insufficient evidence to support Defendant's subjective fear, there is similarly insufficient evidence to establish that the killing resulted from such fear.

**{22}** Further, there was insufficient evidence for a jury to find that Defendant acted as a reasonable person would act under the circumstances. A defendant's conduct is objectively unreasonable when "the evidence was insufficient for the jury reasonably to find that [the v]ictim threatened [the d]efendant with death or great bodily harm." *Lucero*, 2010-NMSC-011, ¶¶ 15, 18; *see also State v. Baroz*, 2017-NMSC-030, ¶ 18, 404 P.3d 769 (holding the defendant did not act reasonably, in part, because there was no evidence indicating the victim had any weapons). While we view the facts in the light most favorable to giving the instruction, the undisputed facts reveal that Defendant initiated the deadly confrontation and used deadly force when he faced no threat of death or great bodily harm. Under the circumstances, no reasonable jury could find that Defendant acted reasonably. Here, Defendant initially made a showing of deadly force when he fired multiple "warning shots" while Victim was seated in his vehicle and presented no threat to Defendant. When Victim did exit the vehicle, he was unarmed, had his hands raised, and told Defendant, "We're leaving." Deadly force may only be used if the defendant is threatened with death or great bodily harm. *See Lucero*, 2010-NMSC-011, ¶ 15. Under these circumstances, no jury could find that Defendant reasonably believed Victim had the opportunity or intent to use deadly force against him. As a result, Defendant did not act reasonably in using an assault rifle to shoot and kill Victim. Therefore, Defendant was not entitled to a self-defense instruction, and the district court did not err in refusing to give the requested instruction.

**b.      Defendant was not entitled to a voluntary manslaughter instruction**

**{23}** Defendant argues the district court committed reversible error by failing to instruct the jury on voluntary manslaughter because Victim provoked Defendant by "charging at [Defendant] after shots had been fired" and because Victim and Defendant had previously been in an argument. The State argues that the evidence presented at trial did not merit instruction on voluntary manslaughter because Defendant failed to

demonstrate adequate provocation. We agree with the State and hold there was insufficient evidence to allow a reasonable jury to find Victim provoked Defendant.

**{24}** To convict on voluntary manslaughter, there must be "evidence that there was a sudden quarrel [or] heat of passion at the time of the commission of the crime, to show that the killing was the result of provocation sufficient to negate the presumption of malice." *State v. Reynolds*, 1982-NMSC-091, ¶ 8, 98 N.M. 527, 650 P.2d 811; *see also* NMSA 1978, § 30-2-3(A) (1994) (defining voluntary manslaughter). "The general rule is that, in order to reduce murder to manslaughter, the victim must have been the source of the defendant's provocation." *State v. Manus*, 1979-NMSC-035, ¶ 16, 93 N.M. 95, 597 P.2d 280, *overruled on other grounds by Sells v. State*, 1982-NMSC-125, ¶ 9, 98 N.M. 786, 653 P.2d 162. *Sufficient provocation* is defined as "any action, conduct or circumstances which arouse anger, rage, fear, sudden resentment, terror or other extreme emotions." UJI 14-222 NMRA. "The provocation must be such as would affect the ability to reason and to cause a temporary loss of self control in an ordinary person of average disposition." *Id.* However, the provocation "is not sufficient if an ordinary person would have cooled off before acting." *Id.*

**{25}** Defendant fails to direct this Court to any evidence in the record establishing Victim sufficiently provoked Defendant. "[T]he law does not permit one who intentionally instigates an assault on another to then rely on the victim's reasonable response to that assault as evidence of provocation sufficient to mitigate the subsequent killing of the victim from murder to manslaughter." *See State v. Gaitan*, 2002-NMSC-007, ¶ 13, 131 N.M. 758, 42 P.3d 1207. Here, the evidence in the record reveals Defendant provoked Victim to exit the vehicle when Defendant stood on his porch and fired a series of shots from an assault rifle in the general direction of Victim's fiancée. When Victim exited the vehicle, Victim was unarmed, had his hands raised, and told Defendant that he and his family were leaving. As Defendant fails to direct this Court to any evidence in the record to establish Victim sufficiently provoked him, the district court did not err in refusing to instruct the jury on voluntary manslaughter.

## 2. Unpreserved claim

**{26}** Defendant argues the district court erred by failing to instruct the jury on defense of habitation. Defendant did not request an instruction on defense of habitation, so we review his claim for fundamental error. *Benally*, 2001-NMSC-033, ¶ 12. Under this standard, our inquiry remains "'whether a reasonable juror would have been confused or misdirected by the jury instruction.'" *Id.* ¶ 12 (quoting *State v. Cunningham*, 2000-NMSC-009, ¶ 14, 128 N.M. 711, 998 P.2d 176). We first determine "whether an error occurred" and, if so, "whether the error was fundamental." *State v. Silva*, 2008-NMSC-051, ¶ 11, 144 N.M. 815, 192 P.3d 1192. Error occurs only when there is sufficient evidence at trial to support giving the instruction. *Boyett*, 2008-NMSC-030, ¶ 12. "Fundamental error only applies in exceptional circumstances when guilt is so doubtful that it would shock the judicial conscience to allow the conviction to stand." *Cunningham*, 2000-NMSC-009, ¶ 13 (internal quotation marks and citation omitted).

**{27}** Defendant argues that he was entitled to an instruction on defense of habitation because he "reasonably could have believed [Victim] intended to commit a felony inside [Defendant's home]." The State disagrees and asserts that the evidence presented at

trial would not have entitled Defendant to a defense of habitation instruction, even if the instruction had been requested. We agree with the State.

**{28}** "New Mexico caselaw is clear that an inhabitant of a dwelling is entitled to significant latitude in the use of force in defense of habitation." *State v. Galindo*, 2024-NMSC-004, ¶ 22, 547 P.3d 112. But, "in every purported defense of habitation, the use of deadly force is justified only if the defendant reasonably believed that the commission of a felony in his or her home was immediately at hand and that it was necessary to kill the intruder to prevent that occurrence." *Boyett*, 2008-NMSC-030, ¶ 15. In this context, a "felony" is "properly limited to those felonies involving violence." *Id.* ¶ 21. A defendant is entitled to a defense of habitation instruction if the evidence "is 'sufficient to allow reasonable minds to differ as to all elements of the offense.'" *Id.* ¶ 12 (quoting *State v. Gonzales*, 2007-NMSC-059, ¶ 19, 143 N.M. 25, 172 P.3d 162). The elements of defense of habitation require a showing that (1) the place where the killing occurred "was being used as the defendant's dwelling," (2) "[i]t appeared to the defendant that the commission of [a violent felony] was immediately at hand and that it was necessary to kill the intruder to prevent the commission of [a violent felony]," and (3) "[a] reasonable person in the same circumstances as the defendant would have acted as the defendant did." UJI 14-5170 NMRA.

**{29}** It is uncontested that Defendant was using the home where the killing occurred as a dwelling. Therefore, we limit our review to the second and third elements. Under the second element, Defendant argues there was sufficient evidence for the jury to find that "it appeared to [Defendant] that the commission of an aggravated battery was immediately at hand," specifically that Victim intended to batter Defendant and cause great bodily harm.[1] Defendant again bases his argument on the evidence showing that Victim exited his vehicle with something in his hands, advanced towards Defendant, and was ten to thirty feet away when Defendant shot and killed him. Based on Defendant's statements of his own subjective fear, a reasonable juror could find that Defendant believed Victim would commit an act of violence against him as he stood on his porch. However, this alone does not satisfy the second element. While defense of habitation does not require that the intruder has actually entered the home, our caselaw recognizes that an assault upon the home with the intent of entry is necessary. *See Boyett*, 2008-NMSC-030, ¶¶ 16-17, 19. Defendant does not argue nor point to any evidence in the record to establish he believed Victim intended to enter or intrude upon the home. Additionally, Defendant points to no evidence in the record to support the subjective belief that Victim intended to harm Victim's mother or Defendant's daughter who were both still inside the home.

**{30}** Because there is no evidence to support Defendant's subjective view that Victim intended to enter the home and commit a violent felony therein, no objectively reasonable person could infer that Victim intended to do so and, therefore, would not act as Defendant did under the circumstances of this case. *See id.* ¶ 23 (holding the

---

[1]Defendant points to evidence that, prior to exiting the vehicle, Victim told his child that he was going to "beat up" Defendant. However, Defendant does not argue nor point to evidence establishing that Defendant was aware of this statement at the time he shot and killed Victim. Therefore, this evidence does not assist Defendant in his claim. *See* UJI 14-5170 ("It appeared *to the defendant* that the commission of [a violent felony] was immediately at hand . . . ." (emphasis added)).

defendant was not entitled to a defense of habitation instruction when there was "no evidence reasonably tending to support the theory that [the v]ictim was attempting to force entry at the time [the d]efendant killed her"). Here, Victim was not an intruder because he was legally authorized to be on the property, made no attempt to enter the home, only exited the vehicle after multiple shots had been fired, had his hands raised, told Defendant that he was leaving, and was not armed with any weapons or tools to aid in perpetrating violence or entering the home. Even when viewed in the light most favorable to giving the instruction, it was unreasonable for Defendant to shoot Victim multiple times when there was no evidence to support a subjective or objective inference that Victim intended to intrude upon the home and commit a violent felony therein. Therefore, the district court did not err in not instructing the jury on defense of habitation.

**{31}**　We hold the district court did not err in failing to instruct the jury on self-defense, voluntary manslaughter, or defense of habitation. Because we hold Defendant's challenges to the jury instructions are without merit, there is no cumulative error. *See State v. Saiz*, 2008-NMSC-048, ¶ 66, 144 N.M. 663, 191 P.3d 521 ("[W]here there is no error to accumulate, there can be no cumulative error."), *overruled on other grounds by State v. Belanger*, 2009-NMSC-025, ¶ 36 & n.1, 146 N.M. 357, 210 P.3d 783.

## C.　Ineffective Assistance of Counsel

**{32}**　Defendant argues his counsel was ineffective because counsel failed to request an instruction on defense of habitation. To establish ineffective assistance of counsel, Defendant must demonstrate that "'counsel's performance was deficient'" and that "'the deficient performance prejudiced the defense.'" *State v. Paredez*, 2004-NMSC-036, ¶ 13, 136 N.M. 533, 101 P.3d 799 (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To establish deficient performance, Defendant must prove counsel "did not exercise the skill of a reasonably competent attorney." *Duncan v. Kerby*, 1993-NMSC-011, ¶ 10, 115 N.M. 344, 851 P.2d 466. To prove he was prejudiced by counsel's deficient performance, Defendant must show that "'there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different.'" *State v. Trammell*, 2016-NMSC-030, ¶ 23, 387 P.3d 220 (quoting *Strickland*, 466 U.S. at 694). "'Failure to prove either prong of the test defeats a claim of ineffective assistance of counsel.'" *Guerra*, 2012-NMSC-027, ¶ 23 (quoting *State v. Reyes*, 2002-NMSC-024, ¶ 48, 132 N.M. 576, 52 P.3d 948).

**{33}**　As explained above, the district court did not err in not instructing the jury on defense of habitation. Accordingly, counsel did not fail to "exercise the skill of a reasonably competent attorney" in not suggesting an instruction that was not supported by the evidence. *See Kerby*, 1993-NMSC-011, ¶ 10. Therefore, Defendant's claim asserting ineffective assistance of counsel fails.

## IV.　CONCLUSION

**{34}**　For the reasons stated above, we affirm Defendant's conviction.

**{35}**　**IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Justice**

**WE CONCUR:**

**DAVID K. THOMSON, Chief Justice**

**MICHAEL E. VIGIL, Justice**

**C. SHANNON BACON, Justice**

**JULIE J. VARGAS, Justice**